**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DEBORAH A. JOHNSON,                )
                                   )
   *and*                           )
                                   )
ANTHONY A. JOHNSON                 )
                                   )
   *Plaintiffs*,                   )
                                   )
v.                                 )     Civil Action No. **WDQ-11-02624**
                                   )
UNITED STATES OF AMERICA           )
                                   )
                                   )
   *Defendant*.                    )
                                   )

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGMENT AS TO COUNTS ONE & TWO**
**AND MOTION TO DISMISS AS TO COUNT TWO**

Plaintiffs Deborah A. Johnson (Mrs. Johnson) and Anthony A. Johnson (Mr. Johnson) filed a two-Count Complaint under the Federal Tort Claims Act against the United States, alleging negligence and breach of duty in Count One and loss of consortium in Count Two.   Mrs. Johnson's claims stem from events which allegedly occurred on January 7, 2009 during a blood drive conducted by the Greater Chesapeake and Potomac Blood Services Region of the American Red Cross at Fort Meade, Maryland.   Mrs. Johnson alleges that the United States was negligent and breached a duty of care owed to her when the United States failed to repair or warn her of a missing wheel on a chair.   When she attempted to sit on the chair, she fell to the floor and claims that she suffered injuries to her lower back and buttocks.

1

As a result of her injuries, in Count Two of the Complaint, both Mrs. Johnson and her husband, co-Plaintiff Mr. Johnson claim damages for loss of consortium.

The Government has moved for summary judgment as to both Counts.   In the alternative, as to Count Two only, it has moved to dismiss for lack of subject matter jurisdiction.

### A. <u>MOTION FOR SUMMARY JUDGMENT (COUNT ONE)</u>

**<u>Statement of Facts</u>**

On January 7, 2009, Mrs. Johnson was a phlebotomist employed by the American Red Cross.   As part of that employment, she participated in conducting a blood drive at the Research and Engineering Building which is located on the campus of the National Security Agency at Fort Meade, Maryland.   Mrs. Johnson had conducted similar blood drives at that location "quite often," maybe "four or five times" before the January 7 event.   ***<u>See Deposition of Deborah Johnson, Attachment A</u>*** at 23:23, 86:20–87:11.   Each time, the drive was conducted in the same area, which included a hallway, a restroom, a table, and several chairs that belong to the NSA. ***<u>Attachment A</u>*** at 27:22, 32:1–7.   Mrs. Johnson is unaware who placed the table and chairs at the location originally.   ***<u>Attachment A</u>*** at 48:1–6.   She claims the table and chairs are "just there" and not specifically placed in the area for the blood drive's purposes.   *Id.*   On the morning of January 7, 2009, Mrs. Johnson arrived to set up for the blood drive at 5:15 AM.   ***<u>Attachment A</u>*** at 32:11–15.   Although the area was not fully lit, she was able to see the table and chairs clearly and navigate the area without visibility difficulties.   ***<u>Attachment A</u>*** at 46:14–47:25.

Before the blood drive team set up their equipment, Mrs. Johnson testified she approached a chair, pulled it out from the table, and attempted to sit on it.   ***<u>Attachment A</u>*** at 38:1–10.   She described the chair as an "office chair" that "looked the same as other chairs" with a cushioned

bottom, a five-pronged base with wheels, and a cushioned back connected to the seat via a vertical metal bar.  ***Attachment A*** at 40:5–21.   Mrs. Johnson noticed "nothing unusual" or "noticeable" about the chair and stated that it was not tilted or askew.  ***Attachment A*** at 89:5–90:5.   As she pulled it out from the table, it rolled properly and did not tip or tilt.  ***Attachment A*** at 91:1–16.  When Mrs. Johnson attempted to sit down, she claims the chair "scooted" out from underneath her and the seat "flipped up," causing her to land on her buttocks in a "spraddle-legged" fashion.  ***Attachment A*** at 38:1, 48:22.  Only "later" did she determine that the chair was "missing a wheel."  ***Attachment A*** at 44:10, 91:15.  She promptly filed an employment incident report.  ***Attachment A*** at Attached Exhibit 2.

Mrs. Johnson stayed for the remainder of the blood-drive, although the nature of her exact duties is unclear.  ***Attachment A*** at 60:24–61:7.  In fact, she did not miss any time from work due to the impact of her alleged fall.  ***Attachment A*** at 61:8–10.  She alleges experiencing some soreness after the work shift in her buttocks, shoulders and lower back.  ***Attachment A*** at 58:20–59:11.  Mrs. Johnson claims that the soreness in her buttocks has persisted, as has the stiffness in the lower left quadrant of her back, and that the stiffness has affected her daily activities, although she has not been prevented from engaging in any of those activities.  ***Attachment A*** at 68:1–69:25.  Mrs. Johnson further alleges that the fall has affected her ability to be intimate, leading to disharmony in her relationship with her husband.  ***Attachment A*** at 67:21.  However, as of June 19, 2012, Mrs. Johnson and her husband were not separated.  ***Attachment A*** at 10:2–5.

In her deposition, Mrs. Johnson testified that shortly after she fell from the chair, she spoke with Mr. Larry Walton, a retired NSA employee who would accompany her and the other the Red Cross workers while they were on NSA's premises.  She claims that when she told Mr. Walton

3

what had happened to her, he commented that he had had the same experience.   Specifically, she contends Mr. Walton said he had used the same chair "a week prior" (December 31, 2008), and the same thing had happened with the chair, causing him to fall.   When asked about this alleged statement, Mr. Walton denied making it.   He also denied falling from the chair and said that in any event, he was not present at NSA on December 31, 2008.   (**_See Attachment B, Declaration of Larry Walton_**).   NSA's official records confirm this.   (**_See Attachment C, Declaration of Donna J. McKenzie,   NSA custodian of records_**).

## SUMMARY OF ARGUMENT

As to Count One, there is no genuine dispute as to any material fact and the United States is entitled to judgment as a matter of law because on January 7, 2009, Mrs. Johnson was a bare licensee at NSA's campus and therefore, the United States owed no duty towards her, other than to abstain from willful or wanton misconduct or entrapment.   *Wagner v. Doehring*, 315 Md. 97, 102 (1989). The record of this case developed during discovery, in particular Mrs. Johnson's deposition, shows that the Government's conduct regarding the chair upon which Mrs. Johnson attempted to sit, did not come close to the level of misconduct required by the *Wagner* case.

Count Two of the Complaint, which is an action for loss of consortium, should be dismissed, or in the alternative, summary judgment in the Government's favor should be granted, (a) because loss of consortium was not explicitly or impliedly raised in Mrs. Johnson's administrative claim and (b) because Mr. Johnson did not file a separate administrative claim in his own name for damages on this basis.   It is the Government's understanding that the Plaintiffs do not dispute this.

4

## APPLICABLE LAW

When a Plaintiff brings a cause of action under the Federal Tort Claims Act (hereinafter "FTCA"), "the law of the place where the act or omission occurred establishes the substantive duties of the United States." *Little v. United States*, 181 F.3d 89 (4th Cir. 1999); *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).    Stated differently, "In FTCA cases, federal law governs the limitations period and the date when a claim accrues" but "[s]tate law determines whether there is an underlying cause of action."   *Trinkle v. United States*, No. CCB-11-3316, 2012 WL 1963393, at *3 (D. Md. May 31, 2012) (quoting *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991).   In the present case, suit is brought claiming governmental breach of duty and negligence at Fort Meade, which is located in Maryland.   Thus, Maryland law governs. Furthermore, Maryland law "adheres to the doctrine of *lex loci delicti*," rendering Maryland law the appropriate choice under the FTCA for an injury sustained at Fort Meade.   *See Lewis v. Waletzky*, 42 Md. 647, 657 (2011) (citing *Laboratory Corp. of America v. Hood*, 395 Md. 608, 615 (2006)).

To establish a *prima facie* case for negligence under Maryland law, Mrs. Johnson must carry her burden to prove that "(1) the [United States] *owed a duty* to protect [her] from injury; (2) the [United States] breached that duty; (3) causation; and (4) damages."   *Coleman v. United States*, 369 F. App'x. 459, 461 (4th Cir. 2010) (emphasis added) (citing *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 642 A.2d 180, 188 (Md. 1994).

## STANDARD OF REVIEW

In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.

*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).   "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is an issue of material fact.   *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).   In reviewing a motion for summary judgment, the "judge's function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment.   *Id.* at 248.

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a *genuine* dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S.   at 586–587 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, (1986).

6

## <u>ARGUMENT</u>

**I.   Mrs. Johnson's status at NSA was that of a bare licensee and therefore, the United States' only duty was to refrain from willfully or wantonly injuring her and from creating new and undisclosed sources of danger without warning her**

It is well-settled that the duty of an owner or occupier of land "depends upon the status of the plaintiffs at the time of the accident." *Casper v. Chas. F. Smith & Son, Inc.,* 316 Md. 573, 578 (1989); *Wagner v. Doehring,* 315 Md. 97, 101, (1989). Thus, the threshold issue to be decided is the legal status of the Mrs. Johnson's presence at Fort Meade on January 7, 2009.

Pursuant to Maryland law, the various duties of care owed to a person on another's property are well-established and turn on the status of the individual.   The four general categories are (i) a business invitee, (ii) a licensee by invitation, (iii) a bare licensee, and (iv) a trespasser. *Tennant v. Shopper's Food Warehouse Md. Corp.*, 115 Md. App. 381, 387-88 (1997),   *Norris v. Ross Stores, Inc.*, 159 Md.App, 323, 334 (2004).

"A licensee by invitation is a social guest and is owed a duty of reasonable care and must be warned of known dangerous conditions that cannot reasonably be discovered." "A bare licensee is one who enters upon property, not as a social guest, but for his or her own convenience or purpose and with the landowner's consent." "No duty is owed to a bare licensee except that he or she may not be wantonly or willfully injured or entrapped, nor may the occupier of land create new and undisclosed sources of danger without warning the licensee."   "Under some circumstances, the landowner may be liable to a bare licensee for a dangerous condition known to the landowner." "Finally, a trespasser is one who intentionally and without consent or privilege enters another's property."   "No duty is owed, except to refrain from willfully or wantonly injuring or entrapping the trespasser." *Wagner* at 102   (*internal citations omitted*).

7

The record of this case demonstrates that Mrs. Johnson's status at NSA on January 7, 2009, could only fit two of the aforementioned possible categories[1] -- that of a bare licensee, or a business invitee.   For the sake of completeness, this Memorandum will analyze the Government's liability, or rather, the lack of it, under each visitor category.

**Bare Licensee**

It is plain from the Agreement between NSA and the American Red Cross (***See Attachment D, Declaration of Sandra Ware***) that the blood drive which took place at NSA on January 7, 2009, was for the benefit of the American Red Cross – not the NSA.   The event was made possible thanks to the participation of public-spirited employees of NSA who volunteered to give blood for the benefit of others.   NSA stood to gain no benefit from the blood drive which was conducted purely for charitable purposes.

Even if the Government were to accept, which it does not, Mrs. Johnson's deposition testimony in which she said that Larry Walton had told her he had had the same experience with the chair a week prior, this would still not create a genuine dispute of material fact, because the record is devoid of any evidence that NSA, or any of its employees or agents, wantonly or willfully injured or entrapped Mrs. Johnson, or that they created "new [or] and undisclosed sources of danger without warning [her]." *Sherman* at 242.

"There is a distinction between 'willful' and 'wanton' misconduct. Willful misconduct is performed with the actor's actual knowledge or with what the law deems the equivalent to actual

---

1 Mrs. Johnson could not have been a licensee by invitation because she very obviously was not a social guest at NSA.   An invited licensee is a social guest, "one who enters property with the possessor's knowledge and consent but for his or her own purpose or interest." *Wells v. Polland*, 120 Md. App. 699, 710 (1998). The owner "owes no duty to a licensee under the traditional common law view except to abstain from willful or wanton misconduct or entrapment." *Id.* (*citing Bramble v. Thompson*, 264 Md. 518, 521 (Md., 1972)).   Also, she was certainly not a trespasser and there is no contention to that effect.

knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury." *Wells v. Polland*, 120 Md.App. 699, 719 (1998), (quoting *Doehring v. Wagner,* 80 Md. App. 237, 246 (1989).   By contrast, a wanton act is one performed with reckless indifference to its potential injurious consequences. *Id.* The term "wanton" generally denotes "conduct that is extremely dangerous and outrageous, in reckless disregard for the rights of others." *Id.*   (quoting *Mech v. Hearst Corp.,* 64 Md.App. 422, 428-9 (1985), *cert. denied,* 305 Md. 175 (1986)).

Here, even assuming *arguendo* that Larry Walton said what Mrs. Johnson claims he said, NSA's conduct would still not rise to the level of wantonness or willfulness, which is what is required for liability to attach in the case of injuries to a bare licensee.

## II.   Assuming *arguendo* that Mrs. Johnson was a business invitee at NSA and the United States had a duty of care towards her, she has failed to prove the United States breached that duty because the it had no actual or constructive knowledge of the wheel defect

### Business invitee

Assuming for the sake of discussion that Mrs. Johnson had the status of business invitee on January 7, 2009, she would still not prevail against the Government's Motion for Summary Judgment.   A business invitee is "one invited or permitted to enter another's property for purposes related to the landowner's business." *Tennant v. Shopper's Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997) (quoting *Casper v. Chas F. Smith & Son Inc.,* 71 Md.App. 445, 457, (1987), *aff'd,* 316 Md. 573 (1989), *Norris v. Ross Stores, Inc.*, 159 Md.App, 323, 334 (2004).   As such, an owner has an obligation to "protect the invitee from injury caused by an unreasonable risk" that the invitee would not ordinarily perceive. *Casper*, 71 Md. App at 457. This obligation has also been articulated as "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a

duty to take reasonable precautions against foreseeable dangers." *Tennant*, 115 Md.App. at 388.

The United States cannot be liable for negligence under Maryland law because it owed Mrs. Johnson no duty of care to protect her from the wheel defect.   A duty of care arises from a disparity of knowledge between visitor and property owner; the plaintiff visitor must show that the landowner defendant knew of the danger and failed to warn plaintiff, knowing that the plaintiff would not discover the defect on her own.   The Maryland Court of Appeals has long used the following standard:

> It is an accepted statement of law that a possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if he (1) *knows, or by the exercise of reasonable care could discover*, the condition which, if known to him, he should realize as involving an *unreasonable risk* to them, and (2) has *no reason* to believe that [the visitors] will discover the condition or realize the risk involved therein, and (3) invites or permits them to enter or remain upon the land without exercising reasonable care to make the condition reasonably safe, or to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility. *Tennant*, 115 Md. App. at 389 (quoting *Rawls v. Hoschschild, Kohn & Co.*, 207 Md. 113 (1955) (emphasis added)).

Thus, in a negligence claim, the burden of proof is on Mrs. Johnson to show that the United States either caused the chair's defect or had knowledge of it and failed to warn her.   The sole reference to the Government having any knowledge of the chair's defective status came from Mrs. Johnson when she testified as follows in her deposition:

Q:    And what other communication was there
      between you and [Mr. Walton], if any?

A:    None other than the fact that he
      chuckled and said ***the same thing had happened to
      him a week prior***. (***Emphasis added***).

Q:    Okay. What were, as best as you can
      recall, what were the words he used?

10

A:     I think it was something like ***I fell out
       that same chair last week*** or something like that. (***Emphasis added***).

Q:     Did he say anything else?

A:     I don't recall.  (***Attachment A***   83: 10 – 20).

Mr. Walton's recollection of the events of January 7, 2009, is quite different.   He absolutely denies making any comment about the chair to Mrs. Johnson and, in fact, states that he was not even present on the NSA campus the "week prior" because that would have been January 31 – New Year's Eve.  (***See Declaration of Larry Walton   -- Attachment B***).   Furthermore, Mr. Walton's statement as to his whereabouts on December 31 is corroborated by NSA's own ingress and egress records which show that the last time he was physically present on NSA's campus before January 7, 2009, was December 3, 2008.   (***See Attachment C***).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Thus, Mrs. Johnson has failed to prove anywhere in the record that the United States knew about the chair's alleged defect or failed to investigate the chair in a way that a reasonable person would have.   In fact, she stated that the chair rolled properly and looked like all the other chairs, that it did not tilt or wobble, and that only a "*full examination*" of the chair would have revealed the missing wheel.   ***Attachment A*** 47:14. Furthermore, she has failed to present any credible evidence that the United States or any of its agents had knowledge of the defect.

Plaintiff has also failed to show that she herself was incapable of noticing the defect while at the same time claiming the United States should have known of it.   To the contrary, she claimed

11

that she would have noticed the missing wheel had she investigated further.   ___Attachment A___ 47:14.

As such, she cannot prove the requisite disparity of knowledge, has failed to prove the United

States owed her a duty, and has not met her burden of proving negligence under Maryland law.

*See Tennant*, 115 Md. App at 389.

In *Little v. United States*, (Unpublished) No. 98-1835, slip.op. (4th Cir., June 11, 1999), the

Fourth Circuit considered a claim strikingly similar to the case *sub judice*.     In *Little,* the plaintiff

was injured while sitting on a bench outside a café on property owned by the Nuclear Regulatory

Commission. The concrete base of the bench had corroded over time, and when it gave way, the

plaintiff fell and brought suit against the United States for the subsequent injuries.   *See id.* at *1–

*2.   Even though the café owner was aware of the corrosion and the bench's condition, there was

no evidence that the United States has knowledge of it.   The district court found the plaintiff to be

"an invitee on the United States' land" and was only owed a duty of care if the plaintiff could

show:

> "[the] injury   [was] caused by an unreasonable risk that the invitee would be
> unlikely to perceive in the exercise of ordinary care for his or her own safety, *and
> about which the owner knows or could have discovered in the exercise of
> reasonable care*."

*Id.* at *2 (emphasis added).   The *Little* plaintiff failed to meet that standard, as the government had

no knowledge beyond what the plaintiff was capable of observing herself and, therefore, owed the

plaintiff no duty of care.   Accordingly, the district court granted summary judgment for the

United States.   In its unpublished opinion, the Fourth Circuit affirmed and upheld the district

court's factual finding that the United States had no knowledge of the condition and had no notice

that should have led to some inspection.   In doing so, it discussed "five possible scenarios"[2] that may have led to the plaintiff's fall and found that "either the United States did not have notice of the defect or [the plaintiff] was contributorily [sic] negligent."   *Id.* at \*2–\*3.

Here, as in the *Little* case, the United States did not owe a duty to Mrs. Johnson, an essential element to prove a case of negligence, because it neither knew of the defective wheel nor could have discovered it in the exercise of reasonable care.   As in *Little*, no evidence suggests that the United States had either knowledge of the chair's condition or notice that would warrant some thorough inspection of the chair.   In fact, the contrary is evidenced through the Plaintiff's own testimony.   Plaintiff gave the chair a reasonable cursory investigation as she pulled it out from the table and attempted to sit.   Plaintiff even admits she noticed "nothing unusual" about the chair and that only a "full examination" would have revealed the defective wheel.   **_Attachment A_**   at 47:14, 89:5.   As such, the United States cannot be charged with a duty of care and held liable for this latent defect that was not readily apparent.   The United States had no notice of the defect, and the defect could not be detected through a reasonable investigation of functionality and appearance, similar to that conducted by the Plaintiff.   Thus, Plaintiff's evidence shows that the United States would not have discovered the defect in the exercise of due care.   **_Attachment A_** at 47:14, 89:5.   *Little*'s five scenarios are instructive and should lead the Court to determine that the United States

---

[2]   The scenarios were as follows: The bench was (1) patently defective or (2) had a defect discoverable after reasonable inspection.   In these two scenarios, the plaintiff "was contributorily negligent in sitting on the bench," relieving the United States of liability, regardless of any actual or constructive notice.   *See Little,* 181 F.3d at \*2–\*3.   The bench could also (3) have had a latent defect, which removes contributory negligence from the plaintiff but also removes any duty by the United States, because due care would not have uncovered the defect.   The bench could have (4) collapsed for some entirely separate reason than the corrosion.   The United States would only be liable if they knew of the other defect, which was unsupported in the evidence.   Finally, there could have been (5) an issue common among many of the benches, causing the United States to be negligent for allowing anyone to sit among the benches, but someone similarly familiar with the benches, like the plaintiff, would be contributorily negligent for sitting on them.   *See id.*

had no knowledge of the issue — and hence was not negligent — or that the Plaintiff had reciprocal knowledge and is barred from claiming negligence.   *See* 181 F.3d at \*2–\*3.   In any of these situations, the government did not breach a duty to the Plaintiff, and summary judgment in favor of the United States is appropriate.

Plaintiff has failed to show that the United States knew or should have known that the chair or its allegedly defective wheel posed any danger to Plaintiff.   Under Maryland law, "[t]he mere existence of a defect or danger is insufficient to establish liability, unless the proprietor either created the dangerous condition or had actual or constructive knowledge of its existence."   *Ronk v. Corner Kick, Inc.*, 850 F. Supp. 369, 370 (D. Md. 1994); *see also Maans v. Giant of Maryland, Inc.,* 161 Md. App. 620, 629 (quoting *Rehn v. Westfield America*, 153 Md. App. 586, 593, (2003) (requiring "proprietor '[have] actual or constructive knowledge of it, and that that knowledge [be] gained in sufficient time to give the owner the opportunity to remove it or warn the invitee'").   A property owner has constructive knowledge when he could have discovered the allegedly dangerous condition "by the exercise of ordinary care, so that, if it is shown that the conditions have existed for a time sufficient to permit one, under a duty to know of them, to discover them, had he exercised reasonable care, his failure to 3." *Deering Woods Condominium Ass'n v. Spoon*, 377 Md. 250, 264 (2003) (internal quotation omitted).

Stated differently, "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land *if, but only if,* he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees." Restatement (Second) of Torts § 343 (emphasis added); *Deering Woods Condominium Ass'n*, 377 Md. at 262–63.   In this case, Plaintiff bears the burden of showing that

14

the United States had actual or constructive knowledge that the chair and its allegedly defective wheel was in a dangerous condition. *See Rehn*, 153 Md. App. at 593 (citing *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232 (1965) (requiring plaintiff to show more than "speculation or conjecture" because a "mere surmise that there may have been negligence is not enough"); *Joseph v. Mozzuto Mgmt.* Co., 173 Md. App. 305, 315 (2007) ("burden is upon the customer to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence").

Courts from other states with factual backgrounds quite similar to the case *sub judice* have been confronted with lawsuits involving Plaintiffs who were injured while attempting to sit on chairs.   For instance, in *Ford v. Bank of America Corporation*, 277 Ga.App. 708, (2006), the Plaintiff entered the Defendant's bank to order some new checks. She was familiar with the bank, having been there many times before.   She decided to sit down and selected an office chair with wheels.   In the course of sitting down, the chair "just went out from under" her.   She fell to the floor and suffered injuries including a broken wrist, a vertebral compression fracture, and a chipped tooth. When asked if she realized that the chair had wheels on it before she sat down, the Plaintiff said she did not.   However, she admitted that she had used the chairs on previous visits to the bank and that nothing had obstructed the chair wheels from her view.   The Plaintiff added that she had seen nothing on the floor that would have caused the chair to flip, did not examine the chair and had no information that it was defective.   In upholding the lower court's decision to grant summary judgment to the Defendant, the Georgia Court of Appeals, using the same legal standards applied in the Maryland cases cited herein, held that "Proof of an injury, without more, is not enough to establish a proprietor's liability. [T]o recover for injuries sustained in a slip and fall

15

action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner or occupier. Without first establishing that a dangerous condition existed, the plaintiff cannot establish that the defendant knew about the danger and therefore cannot recover." *Id.* at 709 (*internal citations omitted*).

In *Granison v. Builders Square, Inc.,* 697 N.Y.S.2d 800 (4th Dep't 1999) the court considered a case with facts almost identical to the instant matter. In *Granison,* the plaintiff fell as she attempted to sit on a chair equipped with casters which had been provided by defendant– in the course of sitting down, her leg contacted the footrest causing the chair to roll away from her. The trial court denied the defendant's motion for summary judgment.   However, the New York State Appellate Division reversed and dismissed the plaintiff's complaint. In so doing, the Appellate Division wrote:

> "Contrary to plaintiff's contention, defendant had no duty to lock or otherwise fix the wheels of the chair to prevent it from moving; mobility is the very function of the wheels. There is no evidence in the record that the chair constituted a hidden danger to plaintiff so as to require defendant to give her a special notice or warning with respect to said object. Furthermore, there is no duty to warn against a condition that can be readily observed by the use of one's senses." *Id.* at 801.

In *Page v. Biloxi Regional Medical Center*, 2012 WL 2003352 (Miss.App.), the Plaintiff was employed to repair damage to a local casino caused by Hurricane Katrina. The defendant Biloxi Regional Medical Center (BRMC) was one of the few places along the Gulf Coast that was serving meals in the wake of the disaster.    In order to accommodate the community, the defendant increased the seating in its cafeteria by renting preassembled folding chairs.    While working at the casino, the Plaintiff went to BRMC for lunch.   He sat on one of the rented chairs

16

which promptly collapsed, causing him to fall to the floor. After Page's fall, hospital staff immediately questioned the Plaintiff to see if he desired medical assistance, which he declined. The chair was taken out of service and removed from the cafeteria because its legs were bent. The trial court granted summary judgment for the defendant BRMC and the Plaintiff appealed.   The Mississippi Court of Appeals affirmed noting that "mechanical devices simply fail unexpectedly from time to time, and that something more than a device's failure must be shown in order to establish a breach of the standard of reasonable care. Similarly, here, the sole fact of the chair breaking simply is not enough to show negligence." *Id.* at 2 -3 (*internal citations omitted*).

The common thread that runs through all of the aforementioned cases dealing with injuries allegedly caused by chairs is that the mere fact that a plaintiff suffers injuries while using or attempting to use a chair is not enough to impute liability to a defendant.   The evidence demonstrates that Mrs. Johnson has not met her burden to prove the United States had constructive knowledge of any problematic issues with the chair she attempted to use.   She has failed to proffer any credible evidence that the United States knew or should have known of the alleged danger the chair presented.[3]   Prior to January 7, 2009, no one brought the defect to the United States' attention, with the result that the United States was unaware that the chair posed a risk to individuals attempting to sit on it.   To the contrary, Plaintiff testified it showed no external signs

---

[3] The only "evidence" about the chair from which she fell (other than her own deposition) that plaintiff has produced is a Declaration from Mr. Larry Walton dated July 20, 2012, given to plaintiff's counsel,   (***See Attachment E***), in which he describes certain metal folding chairs that were supplied and used by the Red Cross during the blood drives at NSA.   According to Mr. Walton, some of these metal folding chairs broke from time to time and would be placed in a cubbyhole for disposal on the first floor of the Research and Engineering Building where the blood drives were held. Mr. Walton advised in addition to the metal folding chairs, there were "chairs with wheels" in the area of the blood drive that he understood to be the property of NSA.   In ***Attachment E***, Mr. Walton stated "It is my understanding that the chair involved in the "Occurrence" was an NSA Chair that the female phlebotomist [plaintiff] retrieved from the cubbyhole."   First, Mr. Walton's "understanding" is hardly admissible evidence.   See, Fed. R. Civ. P. 56(c)(4). Second, his statement does not say that the chair selected by the plaintiff was broken, or damaged, or that he knew either to be the case.   Third, the only chairs that Mr. Walton described as being broken were of the "metal folding variety" – not chairs with wheels which was the kind of chair upon which she chose to sit.   Hence, the contents of Mr. Walton's Declaration in ***Attachment E*** do not rise to the level of creating a genuine issue of material fact.

of missing a wheel.  ***Attachment A*** 48:3, 47:14.   In fact, nothing was "noticeable" about the chair, as Plaintiff recalled.   ***Attachment A*** at 89:6–7, 89:13.   Even when pulled out from the table, the chair appeared to roll properly and showed no observable signs of defect, according to Mrs. Johnson.   ***Attachment A***   at 91:1–14.   Nor was the chair tilted to one side, which would be reasonable to expect if it had been missing a wheel, or if one of its wheels had been loose.   ***Attachment A*** 89:8.  This evidence all shows that even if some indication of the chair's dangerousness had arisen prior to January 7, 2009, the United States was not notified of it.   Furthermore, had the United States or its agents conducted a reasonable and brief visual inspection of the chairs, like that done by Mrs. Johnson, it still would have been unlikely to find any defect in the chair, because there were no external signs of defect.   Only a "full examination" would have revealed the defect, according to Mrs. Johnson.   ***Attachment A*** at 47:14.   In this situation, with property (the chair) that showed no external signs of risk and that had generated no prior complaints, a land owner (the government) cannot be said to have constructive knowledge of any risk posed on his property.   *See Ronk*, 850 F. Supp. at 370–71 (no actual knowledge, in slip and fall case, where "[n]o one ever called a wet spot to Defendants' attention on a previous occasion").   As such, the government cannot be held liable for negligence regarding Mrs. Johnson's fall.

In addition, no evidence shows that the alleged danger posed by the chair was "an open and obvious condition" to all who observed the chair, so as to charge the United States with constructive knowledge of the dangerous condition.[4]   *Coleman v. United States*, 369 F.App'x. 459, 461-62 (4th Cir. 2010) (declining to charge United States with duty of care to plaintiff falling

---

[4]   Even if the Court does find the wheel to be so "open and obvious" as to charge the United States with constructive knowledge, Plaintiff's claims would still fail for assumption of risk.   *See Coleman v. United States*, 369 F.App'x. 459, 461–62 (4th Cir. 2010) ("the open and obvious nature of the risk, if any, posed by the debris negated USA's duty to warn or protect Coleman against it")

on government property).   Indeed, as Plaintiff testified, the chair showed no apparent signs of defect and seemed to be functioning properly before Plaintiff's attempt to sit on it.   **_Attachment A_** at 89.   In fact, Plaintiff has failed to provide any credible evidence to the contrary.   As such, summary judgment for the United States is warranted, as Plaintiff has not met her burden of establishing that the United States "had actual or constructive knowledge of [the defect]."   *Id.* at 461.   Summary judgment is proper because Plaintiff's purported "evidence of [the United States'] negligence is, in sum, no more than mere surmise, which is insufficient as a matter of law to raise a triable issue." *Ronk*, 850 F. Supp. at 371; *see also Reid v. Washington Overhead Door, Inc.*, 122 F. Supp. 2d 590, 592–93 (D. Md. 2000) (granting summary judgment where plaintiff "has clearly failed to show that Defendant United States knew the loading dock door was defective or dangerous").

Consequently, even if the Court were to decide that Mrs. Johnson was an invitee at NSA on January 7, 2009, there would still be no genuine dispute of material fact because the remarks she claims were made by Larry Walton regarding his alleged experience with the offending chair "a week prior" have been thoroughly debunked by Mr. Walton and NSA's own access records, which show that Mr. Walton was not at the R &E Building the week before.   Therefore, viewing the facts in the light most favorable to the Mrs. Johnson, there is no **_genuine_** dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As the Supreme Court has emphasized, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Industrial Co.* at 586–587 (1986) (footnote omitted).

Accordingly, the United States' motion regarding the breach of duty count should be granted.

**B.  MOTION TO DISMISS COUNT TWO, OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AS TO COUNT TWO (LOSS OF CONSORTIUM)**

**This Court Lacks Subject Matter Jurisdiction Over The Johnsons' Loss Of Consortium Claim As It Was Not Made The Subject Of An Administrative Claim**.

In Count Two of the Complaint Mr. and Mrs. Johnson attempt to state a claim for the common law tort of loss of consortium. However, this claim must also be dismissed for lack of subject matter jurisdiction, or in the alternative, the Defendant requests that summary judgment be entered as to this Count.     A plaintiff is entitled to bring a claim in federal district court for a tort allegedly committed by a government agent or agency only where such a claim was first the subject of a timely filed separate administrative claim presented to and denied by the agency. 28 U.S.C. § 2675(a). Here, while Mrs. Johnson filed an administrative claim for personal injuries she sustained in the fall, her husband Co-Plaintiff Mr. Johnson, did not file an administrative claim of any kind. Therefore, the Court lacks subject matter over Mr. Johnson's claim for loss of consortium. *Id.*

This is true even though Mrs. Johnson filed an administrative claim, because the claim did not explicitly, or implicitly include her husband's claim. This Court has previously rejected the argument that a husband's administrative claim for loss of consortium may be embodied in his wife's FTCA administrative claim. *Santoni v. United States*, 450 F. Supp. 608, 609-610 (D. Md. 1978) (Miller, Jr., J.); *Otto v. United States*, 634 F. Supp. 381, 382 (D. Md. 1986) (Hargrove, J.). Where a spouse files a claim such as loss of consortium, courts have consistently held that the claim is separate and independent and *must be the subject of a separate administrative claim. See*

*Richardson v. United States*, 831 F. Supp. 657, 661 (N.D. Ind. 1993) (*emphasis added*) (spouse must file separate claim for loss of consortium); *Wozniak v. United States*, 701 F. Supp. 259, 262 (D. Mass. 1988);   *Dondero v. United States,* 775 F. Supp. 144, 149 (D. Del. 1991). Where such an administrative prerequisite is not met, the claim must be dismissed, as the court is deprived of subject-matter jurisdiction to hear the husband's claim for loss of consortium. *Santoni* 450 F. Supp. at 610.   It is well-settled that the requirement of filing an administrative claim is jurisdictional, may not be waived and can be asserted at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006); *Trinkle v. United States*, 2012 WL 1963393 * 2 (C.A. 4 (Md.)) *decided May 31, 2012*; *Kanai v. McHugh***,** 638 F.3d 251, 255 (4th Cir. 2011); *Kielwien v. United States,* 540 F.2d 676, 679 (4th Cir.), *cert. denied,* 429 U.S. 979 (1976).

Once Mr. Johnson's loss of consortium suit is dismissed, Mrs. Johnson's suit must also fail, since she cannot proceed on such a claim *alone*. The Government is liable for personal injuries under the FTCA only to the extent that a private person would be liable to the claimant in accordance with the law of Maryland; the place where the negligent act is alleged to have occurred. *See* 28 U.S.C. § 1346(b). In Maryland, an action for loss of consortium may only be maintained as *a joint action by both husband and wife*.   *See Deems v. Western Maryland Ry*., 247 Md. 95, 115 (1967); *In re Longhenry*, 246 B.R. 234, 239-240 (D. Md. 2000)(Derby, J.); *Burke v. United States*, 605 F. Supp. 981, 995 (D. Md. 1985)(Miller, Jr., J.).   Stated simply, the loss of consortium claim of Mrs. Johnson cannot survive alone. *Santoni*, at 610.

Since the Court lacks subject matter jurisdiction over the Johnsons' claim for loss of consortium due to Mr. Johnson's failure to file an administrative claim as required by 28 U.S.C. §

2675(a), this Court must dismiss Count Two of the Complaint. *Santoni*, at 610.   In the alternative, the Defendant requests that the Court grant summary judgment in its favor as to Count Two.

## **CONCLUSION**

As to Count One, Mrs. Johnson was a bare licensee on the day she fell from the chair at NSA.   As such, her burden is to show that the United States wantonly or willfully injured or entrapped her, or that it created new and undisclosed sources of danger without warning.   This she understandably cannot do, because there is absolutely no admissible evidence of it.   Count Two, the loss of consortium claim, must be dismissed because it was not raised by Mrs. Johnson at the administrative level, nor did her husband, Mr. Johnson, file a separate administrative claim seeking damages on this basis, with the result that this Court lacks subject-matter jurisdiction to consider this Count.   Accordingly, the Defendant requests that the Court grant the United States' Motion for Summary Judgment as to Count One of the Complaint and that Count Two be dismissed, or in the alternative that summary judgment be entered in the Defendant's favor as to Count Two.

Respectfully submitted,

ROD J. ROSENSTEIN
United States Attorney

By:   ___/s/_____
Andrew G.W. Norman
Federal Bar No. 00242
Assistant United States Attorney
36 South Charles Street
Baltimore, Maryland 21201
(410) 209 - 4821

.