IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

DEBORAH A. JOHNSON, *et al.*            *

    *Plaintiffs*            *

        v.            *            Case No.: 11-cv-02624-WDQ

UNITED STATES OF AMERICA, *et al.*            *

    *Defendants*            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO COUNTS ONE & TWO AND MOTION TO DISMISS AS TO COUNT TWO

Plaintiff Deborah Johnson, a Red Cross employee conducting a blood drive at the Campus of the National Security Agency, was injured when the chair she attempted to sit on flipped as she sat down in the early morning hours of January 7, 2009. The chair was defective; it was missing a wheel at the base of one of its five legs.

This defect was hidden to Mrs. Johnson because she likely removed the chair from under a table before she sat down, and the table obscured her vision of the defect. However, the United States of America either knew or should have known about this dangerous condition. First, the evidence indicates that this chair was removed from a "cubbyhole" on the NSA Campus used to store damaged and defective chairs and materials. Second, no warning was placed on this chair before it was removed from the cubbyhole to either prevent its removal or warn invitees of its potential danger. Third, there is no evidence that the National Security Agency inspected the premises where Mrs. Johnson fell for hazardous conditions prior to her fall – despite the NSA's mission and objective to protect this nation and its citizens from peril. Fourth, the United States quickly discarded the chair after the incident; so the hazardous condition was either obvious or the condition of the chair supported Mrs. Johnson's case. Fifth, the missing wheel was never located, so we can infer that the hazardous condition existed for some time prior to Mrs. Johnson's injury. Sufficient time passed to put the United State on constructive notice, as a matter of law, of the hazardous condition.

The United States rests its case on one word ("week" instead of "month") that Mrs. Johnson heard after she was injured in her fall – a time when she was most likely focused on her injury and not fully on another person. Therefore, Plaintiffs Deborah and Anthony Johnson[1] oppose the motion for summary judgment and the motion to dismiss filed by the United States, and, in support of their response, state:

1. **STATEMENT OF MATERIAL FACTS.**

   **1.1   MATERIAL FACTS PROVIDED BY THE UNITED STATES OF AMERICA.**

   Larry Walton, who retired from the National Security Agency (the NSA") in 2007, testified about his personal knowledge of an incident that occurred on January 7, 2009.[2]

   After Mr. Walton retired from the NSA, he routinely volunteered at the NSA to coordinate blood drives held by the American Red Cross ("Red Cross").[3] During this time he was affiliated with the NSA.[4] His duties during these blood drives included, among other things, escorting all Red Cross employees while at the NSA facilities.[5]

   The Red Cross blood drives were routinely held on the first floor of the Research & Engineering Building on the NSA Campus from 2007 to present.[6] The Research & Engineering Building is located at 9840 Obrien Road, Fort Meade, Maryland 20755, on the NSA Campus in Fort Meade, Maryland.[7] The Government admitted that it or its agents own and operate the NSA Campus and Facilities,[8] and that the Government was the "sole owner and operator of the premises."[9]

   The Red Cross blood drives were set up in a large open area on the first floor of the Research & Engineering Building.[10] Mr. Walton marked the general area where the blood drives were routinely set up with a "BD" on *Exhibit A* attached to his declaration – attached to this Response as **Exhibit 1**.[11] The Government has confirmed that "[t]he blood drive was held at the Research and Engineering Building in 2009 in the lobby area located between TFCU and the

---

[1] By and through their attorneys, David C. Ledyard-Marks and the Law Office of Barry R. Glazer, P.C., pursuant to Federal Rule of Civil Procedure 56.
[2] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶¶ 2, 4, and 13.
[3] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 5.
[4] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 5.
[5] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 5.
[6] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶¶ 6 and 7 and **Exhibit A**.
[7] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 6.
[8] *See* **Exhibits 2** and **3** at Responses 11, 12, 13, 14, and 15.
[9] *See* **Exhibit 4** at Answer #18 and **Exhibit 5** at Answer #2.
[10] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 7 and **Exhibit A**.
[11] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 7 and **Exhibit A**.

entrance of the building."[12]

The Red Cross routinely used metal folding chairs for their blood drives.[13] These metal folding chairs were stored on a rack in the Research & Engineering Building where the blood drives are held.[14] Mr. Walton actually helped to coordinate the purchase of these chairs sometime prior to 2006 (prior to his retirement).[15]

There were approximately 50 metal folding chairs.[16] There were also additional chairs with wheels located in the area of the blood drive that have also been used during the blood drives.[17] Mr. Walton believed these chairs were the property of the NSA (the "NSA Chairs").[18]

Since the Red Cross purchased the metal folding chairs, several metal folding chairs broke or fell into disrepair (the "discarded chairs").[19] Mr. Walton would place the discarded chairs off into a "cubbyhole" on the first floor of Research & Engineering Building – he marked the cubbyhole with a "CH" on *Exhibit A* attached to his declaration – attached to this Response as **Exhibit 1**.[20]

Mr. Walton placed the discarded chairs in the cubbyhole because the cubbyhole was already occupied with other discarded materials.[21] However, he did not know how long the discarded chairs or discarded materials remained in the cubbyhole or who removed the discarded chairs or materials.[22] He did know that the discarded chairs and materials in the cubbyhole were removed over time, but there was no set removal schedule.[23] Sometimes the discarded chairs remained in the cubbyhole for three months and sometimes the discarded chairs would remain in the cubbyhole for up to a year.[24] Neither Mr. Walton nor the Red Cross were responsible for discarding the material and chairs from the cubbyhole.[25] It was their belief that the NSA would remove the discarded material.[26]

---

[12] *See* **Exhibit 5** at Answer #10.
[13] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 8.
[14] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 8.
[15] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 8.
[16] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 8.
[17] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 9.
[18] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 9.
[19] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 10.
[20] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 10 and **Exhibit A**.
[21] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 10.
[22] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 10.
[23] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 11.
[24] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 11.
[25] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 12.
[26] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 12.

Mr. Walton recalled an incident in the morning hours of January 7, 2009, when a female African American phlebotomist from the Red Cross (the Plaintiff Deborah Johnson) fell from a chair (the "Occurrence").[27] The Government confirmed, "On January 7, 2009, [Mrs. Johnson] was an American Red Cross employee working at a blood drive in the Research and Engineering Building, NSA, Fort Meade, Maryland."[28] Mr. Walton recalled that this incident occurred during the set up of a blood drive at the Research and Engineering Building.[29] He believed that the chair involved in the Occurrence was an NSA Chair that the female phlebotomist retrieved from the cubbyhole.[30] The Government confirmed, "During the set up of the area, Plaintiff moved a wheeled chair from the corner, brought it into the center of the room and attempted to sit down in the chair."[31]

The Government has admitted that Mrs. Johnson was an invitee on the Premises of the National Security Agency on January 7, 2009.[32] The "Premises" are located at the R&E Building, 9840 Obrien Road, Fort Meade, Maryland 20755.[33]

### 1.2    MATERIAL FACTS PROVIDED BY MRS. JOHNSON.

In response to the recitation of facts laid out by the United States in its motion for summary judgment, Mrs. Johnson would add that the occurrence on January 7, 200, caused her injury.[34]

Furthermore, Mrs. Johnson directly addresses any confusion about the statement by Mr. Walton concerning the timing of his incident with the NSA Chair prior to Mrs. Johnson's incident below in Section 5.3.

### 2.    THIS COURT SHOULD STRIKE THE DECLARATIONS OF DONNA J. MCKENZIE AND SANDRA WARE FROM THE RECORD, AND THIS COURT SHOULD DISREGARD ALL INFORMATION CONTAINED WITHIN THESE DECLARATIONS.

In ruling on the United States' Motion for Summary Judgment, Plaintiffs Deborah and Anthony Johnson move this court to strike from the record the declarations of Donna J.

---

[27] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 13.
[28] *See* **Exhibit 4** at Answer #12.
[29] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 13.
[30] *See* **Exhibit 1**, July 20, 2012, Declaration of Larry Walton at ¶ 14.
[31] *See* **Exhibit 4** at Answer #12; *see also* **Exhibits 2** and **3** at Response 6 (admitting that Mrs. Johnson attempted to sit in the Chair on the Premises).
[32] *See* **Exhibits 2** and **3** at Responses 1, 2, 3, and 4.
[33] *See* **Exhibits 2** and **3** at Response 5.
[34] *See* **Exhibit 8**.

McKenzie and Sandra Ware.[35] The Johnsons further move this court to strike from the record any information or documents transmitted in these Declarations.

Neither of these witnesses, nor their testimony was provided by the United States after ample time for discovery. The Johnsons requested the names of all witnesses or persons with information relating to this incident.[36] Former Defendant Tower Federal Credit Union (now dismissed) also requested the same information.[37] The identities of these individuals were not disclosed during discovery, nor did the United States supplement its Answers to Interrogatories or Responses to Requests for Production of Documents (as it did several time with medical records obtained) during the discovery period with this information.

Furthermore, Ms. McKenzie refers to "data" and "records" that she reviewed and testified about their contents;[38] reference to these records and the data contained within these records should be stricken for the same reasons. After ample time for discovery, none of these documents, information, or data was provided by the United States to the Johnsons, despite the Johnsons requests for these documents, this information, and this data.[39] Tower Federal Credit Union (now dismissed) also requested these documents, this information, and this data.[40]

Ms. Ware also refers to an "agreement" that was not attached to her Declaration.[41] References to this Agreement should be stricken from the record for the same reasons set forth in the preceding paragraph.

The data and records referred to by Ms. McKenzie constitute classic hearsay, as they are "statements" the United States is offering "into evidence to prove the truth of the matter asserted in the statements."[42] Accordingly, this evidence should be excluded.[43] Furthermore, the data and records referred to by Ms. McKenzie are only partial records, and the Johnson object to their admissibility based on the "rule of completeness."[44]

---

[35] *See* **Docket #29-4** and **Docket #29-5**.
[36] *See* **Exhibit 4** at Answers 1 and 8.
[37] *See* **Exhibit 5** at Answers 8, 13, and 21.
[38] *See* **Docket #29-4** at ¶¶ 2 and 3.
[39] *See* **Exhibit 4** at Answers 9 and 21.
[40] *See* **Exhibit 5** at Answer 20.
[41] *See* **Docket #29-5** at ¶ 4.
[42] *See* Federal Rule of Evidence 801.
[43] *See* Federal Rule of Evidence 802 ("Hearsay is not admissible…").
[44] *See* Federal Rule of Evidence 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time.").

Finally, neither of these witnesses, nor this information, data, or documents are being used for impeachment purposes because the United States (who is providing this information) filed the instant motion for summary judgment.

The purpose of discovery is to reduce surprises at trial or during dispositive motions. This proposition is particularly true when the "surprise" witnesses, information, data, or documents have been requested numerous times by one or more parties and no supplemental discovery responses were filed, despite ample time for discovery.

Because the United States failed to produce any of these witnesses, information, data, or documents during discovery, the Johnsons were prevented from having the opportunity to contradict their testimony (as the United States is trying to do with Mr. Walton and his numerous affidavits). The Johnsons never had the opportunity to examine these documents, depose these witnesses, request additional documents/data/information that may contradict the documents/data/information proffered by the United States, or cross-examine the witnesses.

Accordingly, the testimony of Donna J. McKenzie and Sandra Ware, and the information, data, and records provided or referred to within their declarations should be stricken from the record in deciding this motion for summary judgment. Alternatively, the Johnsons request that this Court hold *sub curia* the instant motion for summary judgment and re-open discovery to allow the Johnsons to examine the documents, data, or records and depose the witnesses.

**3.    THE STANDARDS FOR DECIDING A MOTION FOR SUMMARY JUDGMENT IN THE DISTRICT OF MARYLAND.**

**3.1    THE GENERAL STANDARDS FOR DECIDING SUMMARY JUDGMENT.**

The standards for deciding a motion for summary judgment are well-known to this Court. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45] The movant has the heavy burden of overcoming these two hurdles.[46] Furthermore, the nonmovant's evidence "is to be believed" and "all justifiable inferences are to be drawn in the [nonmovant's] favor."[47]

Material facts are those facts "that might affect the outcome of the suit under governing

---

[45] Federal Rule of Civil Procedure 56(a).

[46] *See* Federal Rule of Civil Procedure 56(a); *Pulliam Investment Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citations omitted)(quotations omitted).

law."[48] These facts are discovered by reviewing the substantive law controlling each case.[49] To determine whether a genuine dispute of material fact exists, the following are reviewed: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."[50] Summary judgment is only appropriate "after adequate time for discovery" has passed.[51]

Summary judgment is inappropriate and will not be entered if a genuine dispute of material fact exists. A genuine dispute exists if upon the review of the evidence a "reasonable"[52] or "fair-minded"[53] jury "could return a verdict for the nonmoving party."[54] To defeat a motion for summary judgment, the dispute of material fact does not need "to be resolved conclusively in favor of the party asserting its existence."[55] The trial judge is not required to make findings of fact.[56] Instead, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[57] In other words, "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[58]

For instance, "Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment …"[59] Furthermore, the analysis is not concluded even if there is no controversy about the historical facts.[60] A genuine issue may exist "as to the inferences or

---

[48] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(citations omitted)(quotations omitted).
[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(citations omitted)(quotations omitted).
[50] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)(citations omitted)(quotations omitted).
[51] *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-323 (1986).
[52] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(citations omitted)(quotations omitted). *See also*, *Brown v. Huntington Ingalls, Inc.*, 2012 U.S. App. LEXIS 14983 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)).
[53] *United States ex rel. Parks v. Alpharma, Inc.*, 2012 U.S. App. LEXIS 17155, 18-19 (4th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)).
[54] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(citations omitted)(quotations omitted). *See also*, *Brown v. Huntington Ingalls, Inc.*, 2012 U.S. App. LEXIS 14983 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)).
[55] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986)(citations omitted)(quotations omitted).
[56] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(citations omitted)(quotations omitted).
[57] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986)(citations omitted)(quotations omitted).
[58] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)(citations omitted)(quotations omitted).
[59] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citations omitted)(quotations omitted).
[60] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 864-865 (4th Cir. 1978). *See also*, 11-56 Moore's Federal Practice - Civil § 56.24 [4][b] ("Inferences From Historical Facts Are Decided by Trier of Fact").

conclusions that may properly be drawn from" these historical facts.[61] Once again, these inferences are viewed in the light most favorable to the nonmoving party, and summary judgment "must be reversed if inferences contrary to those drawn by the trial court might be permissible."[62]

### 3.2 THE GENERAL STANDARDS FOR DECIDING SUMMARY JUDGMENT IN CASES INVOLVING NEGLIGENCE.

The United States Court of Appeals for the Fourth, in *Spaulding v. Ads-Anker Data Systems Midwest, Inc.*,[63] declared, "Summary judgment is particularly inappropriate in negligence actions."[64]

Judge Lay, writing for the Fourth Circuit Court of Appeals, in *Cook v. Baker Equipment Engineering Co.*,[65] stated, "In no other area of the law does the lay jury play a more Definitive role than in a negligence case" because questions of the prudence and reasonableness of an actor's conduct under the given circumstances, foreseeability, and proximate cause "often depend on factual resolution of conflicting interests."[66] These "issues readily lend themselves to policy determinations based upon the general mores of the community."[67] Therefore, "it should be readily perceived that a summary proceeding which denies the parties the right of trial by jury and which attempts to decide the case on abbreviated proof should rarely be used in negligence suits."[68]

Writing for the Fourth Circuit Court of Appeals in *Pierce v. Ford Motor Company*,[69] Chief Judge Parker observed:

It is only where it is perfectly clear that there are no issues in the case that a

---

[61] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 864-865 (4th Cir. 1978). *See also,* 11-56 Moore's Federal Practice - Civil § 56.24 [4][b] ("Inferences From Historical Facts Are Decided by Trier of Fact"). These inferences must be "legally permissible." *See* 11-56 Moore's Federal Practice - Civil § 56.24 [4][b].

[62] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 864-865 (4th Cir. 1978) (quoting *United States v. Diebold*, 369 U.S. 654, 82 S. Ct. 993 (1962). *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1362 (4th Cir. 1975) (citations omitted)). *See also,* 11-56 Moore's Federal Practice - Civil § 56.24 [4][b] ("Inferences From Historical Facts Are Decided by Trier of Fact").

[63] 498 F.2d 517, 518 (4th Cir. 1974); *see also Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862 (4th Cir. 1978).

[64] *Spaulding v. Ads-Anker Data Systems Midwest, Inc.*, 498 F.2d 517, 518 n. 1 (4th Cir. 1974); *see also Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862 (4th Cir. 1978).

[65] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978).

[66] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978).

[67] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978). *See also,* 11-56 Moore's Federal Practice - Civil § 56.24[3][b] ("Distinction Influenced by Considerations of Judicial Competence or Public Policy").

[68] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978).

[69] 190 F.2d 910 (4th Cir. 1951), *cert. denied*, 342 U.S. 887, 72 S. Ct. 178 (1951).

summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented.

In *Gracyalny v. Westinghouse Electric Corp.*,[70] the United States Court of Appeals for the Seventh Circuit agreed with the Fourth Circuit and declared, "Summary judgment is rarely appropriate in negligence cases."[71] The Seventh Circuit noted:

[S]ince tort actions generally encompass a multitude of factual issues and abstract concepts that become elusive when applied to varying concrete factual situations, such actions are usually not appropriate for disposition by summary judgment. *Hughes v. American Jawa, Ltd.*, 529 F.2d 21, 23 (8th Cir. 1976)). In negligence cases, questions concerning the reasonableness of the parties' conduct, foreseeability and proximate cause particularly lend themselves to decision by a jury. *See, e.g.*, *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 865 (4th Cir. 1978); *see also, TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n. 12, 96 S. Ct. 2126, 2133, n. 12 (1976).[72]

In *Michalski v. Home Depot, Inc.*,[73] the United States Court of Appeals for the Second Circuit also agreed with the Fourth Circuit and the Seventh Circuit when it applied these principles to a premises liability case. The Second Circuit stated, "Whether a hazardous condition exists on a landowner's property 'depends on the peculiar facts and circumstances of each case' and is generally a question of fact for the jury."[74] Similarly, the Second Circuit indicated, "Whether the resultant harm was foreseeable to [the Proprietor] is a question of fact for the jury."[75]

Supporting the position of the Second, Fourth, and Seventh Circuits, one prominent treatise notes, "Many issues are usually classified as factual matters, to be determined by the trier of fact unless the evidence is such that no reasonable minds could disagree. Examples of such

---

[70] 723 F.2d 1311, 1316 (7th Cir. 1983).

[71] *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983) (citing *Ceplina v. South Milwaukee School Board*, 73 Wis.2d 338, 342-43, 243 N.W.2d 183, 185 (1975)). *See also,* 11-56 Moore's Federal Practice - Civil § 56.25[2][c] ("Whether Party Was Negligent Is Usually Jury Question").

[72] *Gracyalny v. Westinghouse Electric Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983).

[73] 225 F.3d 113, 121 (2nd Cir. 2000).

[74] *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 121 (2nd Cir. 2000) (quoting *Trincere v. County of Suffolk*, 90 N.Y.2d 976, 977, 665 N.Y.S.2d 615, 688 N.E.2d 489 (1997)). *See also,* 11-56 Moore's Federal Practice - Civil § 56.24 [4][b], n. 19 ("Hazardous condition general issue for factfinder").

[75] *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 121 (2nd Cir. 2000) (citing *Palka v. Servicemaster Management Services Corp.*, 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994)).

issues include: assumption of risk, proximate cause, hazardousness of a condition on real property, and breach of duty."[76]

### 3.3     THE ELEMENTS OF CAUSE OF ACTION FOR NEGLIGENCE IN MARYLAND.

Plaintiffs agree with the contention of the United States that Maryland law applies to this case.[77] It is well-settled in Maryland that the elements necessary to satisfy a cause of action for negligence are:

> (a) A duty or obligation, recognized by law, requiring conformance to a certain standard of conduct for the protection of others against unreasonable risks;
> (b) A failure to conform to that standard (breach of duty);
> (c) A reasonably close casual connection and resulting injury (proximate cause); and
> (d) Actual damage or loss by others.[78]

In its motion for summary judgment, the United States has not disputed that Mrs. Johnson satisfied the third and fourth prongs of her cause of action for negligence (causation and damages). Accordingly, a reasonable juror could conclude that Mrs. Johnson, based on Dr. Macht's report and her testimony, suffered damages as a result of her January 7, 2009, fall and these damages were causally related to her fall.

Typically, the first issue to determine when approaching a premises liability case is what duty a proprietor, owner, or possessor of land owes the person injured upon that land.

### 3.4     PREMISES LIABILITY IN THE STATE OF MARYLAND.

In Maryland, "The responsibility (or duty)[79] of those who own or possess property to people injured on their property depends upon the standard of care owed to the injured person. The standard of care depends upon the injured person's status on the property (at the time of the accident)[80]."[81]

---

[76] 11-56 Moore's Federal Practice - Civil § 56.24 [4][b] ("Inferences From Historical Facts Are Decided by Trier of Fact").

[77] *See* **Docket #29-1** at 5, Memorandum of Law in Support of Motion for Summary Judgment as to Counts One & Two and Motion to Dismiss as to Count Two.

[78] Maryland Civil Pattern Jury Instructions 19:1, Comment (A)(1) (MSBA 2009) (Negligence – "Definition") (citing *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988)).

[79] *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688 (1998) (quoting *BG & E v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 311 (1995)).

[80] *Tennant v. Shoppers Food Warehouse Maryland Corp.*, 115 Md. App. 381, 387 (1997) (quoting *Casper v. Charles F. Smith & Son, Inc.*, 316 Md. 573, 578, 560 A.2d 1130 (1989)).

[81] MPJI-Cv 24:1 Maryland Civil Pattern Jury Instructions 24:1 (MSBA 2009) ("Basis of Premises Liability").

4.    **THERE IS NO GENUINE DISPUTE OF MATERIAL FACT THAT MRS. JOHNSON WAS AN INVITEE ON THE NSA CAMPUS, FORT MEADE, AND THE RESEARCH & ENGINEERING BUILDING AT THE TIME OF THE OCCURRENCE – A FACT CONCLUSIVELY ESTABLISHED FOR THE PURPOSES OF THIS LITIGATION.**

Federal Rule of Civil Procedure 36(a)(1)(A) permits a party to serve on any other party "a written request to admit, for the purposes of the pending action only, the truth of any matters within the scope of Federal Rule of Civil Procedure 26(b)(1) relating to: facts, the application of law to fact, or opinions about either . . ."

In response to Mrs. Johnson's Request for Admission of Facts, the Government has admitted the following facts:

- Mrs. Johnson was an *invitee* on the Premises of the National Security Agency on January 7, 2009.[82]
- The "Premises" are located at the R&E [Research & Engineering] Building, 9840 Obrien Road, Fort Meade, Maryland 20755.[83]
- Mrs. Johnson attempted to sit in the Chair on the Premises.[84]
- The Government or its agents own and operate the Premises.[85]

Federal Rule of Civil Procedure 36(b) proclaims, "[A] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." The Federal Defendants have not moved this court to withdraw or amend these admissions. If the Federal Defendants proffer evidence refuting any of these admission, Mrs. Johnson requests that this Court grant her an opportunity to file a surreply to supplement this Memorandum.

5.    **A GENUINE DISPUTE OF MATERIAL FACT REMAINS AS TO WHETHER THE UNITED STATES OF AMERICA BREACHED ITS DUTY TO MRS. JOHNSON AT THE RESEARCH & ENGINEERING BUILDING.**

5.1    **THE DUTY OWED BY THE UNITED STATES TO ITS INVITEE, MRS. JOHNSON, AT THE RESEARCH AND ENGINEERING BUILDING.**

A possessor or proprietor of property owes the highest duty of care to an invitee.[86] All invitees, including business, public, or implied, are owed the same standard of care and duty.[87]

---

[82] *See* **Exhibits 2** and **3** at Responses 1, 2, 3, and 4 (emphasis added).
[83] *See* **Exhibits 2** and **3** at Response 5.
[84] *See* **Exhibits 2** and **3** at Response 6.
[85] *See* **Exhibits 2** and **3** at Response 11, 12, 13, 14, and 15.
[86] *See Tennant v. Shoppers Food Warehouse Maryland Corp.*, 115 Md. App. 381, 388 (1997) (citations omitted).

In Maryland, a "proprietor . . . owes a duty to . . . [an invitee] to exercise ordinary care to keep the premises in a reasonably safe condition and will be liable for injuries sustained in consequence of a failure to do so."[88] This is an affirmative duty placed on the proprietor,[89] and this affirmative duty owed to invitees is non-delegable.[90] Furthermore, "it is generally held that employees of an independent contractor are invitees on the property of the landowner."[91] A proprietor or possessor is liable for injuries to employees of independent contractor when retaining "control of the details and the manner in which the work is to be accomplished."[92]

The specific affirmative duties imposed on the proprietor include "the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers."[93] These affirmative duties also includes the "exercise [of] reasonable care to maintain its premises in such a condition that persons accepting its invitation would not be subjected to any risk or danger arising from the physical state of its property, except such as was naturally and ordinarily incident to the nature of its business."[94]

An invitee is "entitled to assume that the proprietor will exercise reasonable care to ascertain the condition of the premises, and [during his inspection] if [the proprietor] discovers any unsafe condition he will either take such action as will correct the condition and make it reasonably safe or give a warning of the unsafe condition."[95]

---

[87] *See Deering Woods Condominium Association v. Spoon*, 377 Md. 250, 263 (Md. 2003) (quoting 2 Restatement (Second) of Torts § 343 (1965)).

[88] *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 627 (2005) (quoting *Rawls v. Hochschild, Kohn & Co., Inc.*, 207 Md. 113, 117, 113 A.2d 405 (1955)).

[89] *Rhaney v. University of Maryland Eastern Shore*, 388 Md. 585, 602 (2005) (quoting *Eyerly v. Baker*, 168 Md. 599, 607, 178 A. 691, 694 (1935)).

[90] *See Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 334-335, 859 A.2d 266 (2004).

[91] *Rowley v. Baltimore*, 305 Md. 456, 466 (1986) (citing Prosser and Keeton on *The Law of Torts* § 61, at 419 (W. Keeton 5th edition 1984); F. Harper and F. James, *The Law of Torts* § 27.12, at 1481 (1956); J. Dooley, *Modern Tort Law* § 19.06, at 444-48 (1982, 1985 Cumulative Supplement).

[92] *Wajer v. Baltimore Gas & Electric Co.*, 157 Md. App. 228, 246 (2004).

[93] *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 627 (2005) (quoting *Tennant v. Shoppers Food Warehouse Maryland Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997)).

[94] *Moore v. American Stores Co.*, 169 Md. 541, 546 (1936) (citing Restatement of Torts § 343; *Benesch & Sons v. Ferkler*, 153 Md. 680, 683, 139 A. 557, 559 (1927); *Dickey v. Hochschild, Kohn & Co.*, 157 Md. 448, 453 (1929); *Grzboski v. Bernheimer-Leader Stores*, 156 Md. 146, 147, 143 A. 706, 707 (1929)). Furthermore, this duty extends beyond "some defect or unsafe condition of the physical property" to the dangers "which may be caused by negligent acts of his employees, or even of customers, where, as a reasonably prudent person, he should have anticipated the possible occurrence and the probable results of such acts." *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636-637 (1994) (quoting *Eyerly v. Baker*, 168 Md. 599, 607, 178 A. 691, 694 (1935)).

[95] *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 627 (2005) (quoting *Rawls v. Hochschild, Kohn & Co., Inc.*, 207 Md. 113, 117-18 (1955)).

The rationale for this rule is that "an invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception, and is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation."[96]

Nevertheless, "[proprietors and possessors] are not insurers of their [invitees'] safety, and no presumption of negligence arises merely because an injury was sustained on [its] premises."[97] In Maryland, "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.[98]

Additionally, "the burden is upon the [invitee] to show that the proprietor created the dangerous condition or had actual or constructive knowledge of its existence" prior to the invitee's injury.[99]

In 'slip-and-fall' cases, such as ours, the [invitee] has the burden to produce admissible evidence showing that (1) "[the proprietor] failed in its duty to make reasonable periodic inspections of the [premises]," and (2) "had [the proprietor] made such reasonable inspections, [the proprietor] would have discovered a dangerous condition."[100]

Under Maryland law, the United States had an affirmative, non-delegable duty to maintain and keep the Research & Engineering Building and the NSA Campus safe for Mrs. Johnson. Moreover, Mrs. Johnson was entitled to assume that the United States would inspect

---

[96] *Deering Woods Condominium Association v. Spoon*, 377 Md. 250, 263 (Md. 2003) (quoting 2 Restatement (Second) of Torts § 343, comment b (1965)). This duty protects invitees within the scope of the invitation. *See Kelly v. McCarrick*, 155 Md. App. 82, 118 (2004) (quoting *Rivas v. Oxon Hill Joint Venture*, 130 Md. App. 101, 109, 744 A.2d 1076, *cert. denied* , 358 Md. 610, 751 A.2d 471 (2000)(citations omitted)). However, "a determination that an invitee has acted within the scope of his/her invitation, as a matter of law, is only appropriate where there is no legally sufficient evidence to support the conclusion that the scope of invitation was exceeded." *Howard County Board of Education v. Cheyne*, 99 Md. App. 150, 156 (1994).

[97] *Rehn v. Westfield America*, 153 Md. App. 586, 593 (2003) (quoting *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636 (1994)).

[98] *Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, 626 (2005) (quoting Restatement (Second) of Torts § 343 (1965)).

[99] *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 627-628 (2005) (quoting *Lexington Market Authority v. Zappala*, 233 Md. 444, 446 (1964) (citations omitted)).

[100] *Maans v. Giant of Maryland, LLC*, 161 Md. App. 620, 626-627 (2005) (citing *Burkowske v. Church Hospital Corp.*, 50 Md. App. 515, 516, 522 (1982)).

the Research & Engineering Building and the NSA Campus and correct any unsafe condition – including discarding broken or damage chairs, such as the NSA Chairs.

Mrs. Johnson's injuries did not occur naturally and ordinarily incident to the nature of the business at the Research & Engineering Building and the NSA Campus – specifically, invitees are not ordinarily injured from damaged or defective chairs as a matter of course at these facilities.

### 5.2   A GENUINE DISPUTE OF MATERIAL FACT REMAINS WHETHER THE NSA CHAIR THAT MRS. JOHNSON SAT IN CONSTITUTED A DANGEROUS CONDITION.

On January 7, 2009, a dangerous condition existed at the Research & Engineering Building on the NSA Campus. An office chair with five legs, and wheels at the end of each leg, was missing a wheel on the end of one of its legs (this was an "NSA Chair"). Mrs. Johnson attempted to sit in this NSA Chair, which flipped out from under her when she sat down. The damaged or defective condition of this NSA Chair constituted a dangerous condition.

According to Mr. Walton, Mrs. Johnson retrieved this NSA Chair from the cubby hole where discarded chairs and materials were placed. Moreover, the United States admits that she retrieved this NSA Chair from that cubbyhole. Because broken chairs and materials were temporarily stored there, it is permissible to infer that the NSA Chair retrieved from the cubbyhole was broken.

Finally, even if Mrs. Johnson found the chair around a table, as she recalled, it is permissible to infer that Mr. Walton observed someone moving this defective NSA Chair from the cubbyhole to the table. It is also permissible to infer that shortly thereafter Mrs. Johnson pulled this chair out from under the table and attempted to sit in it – without an opportunity to inspect its condition and reasonably assuming that a chair placed around a table was in safe condition. This version of events is not inconsistent with either Mrs. Johnson or Mr. Walton's recollection, and, in fact, explains any discrepancy in their recollections.

Additional evidence reveals the hazardous nature of the NSA Chair. Mrs. Johnson had visited the Research & Engineering Building four or five times in the past. She was familiar with the layout and the chairs. She noticed nothing unusual or bad about the NSA Chair that collapsed beneath her – mostly because it was under a table that would conceal any obvious defect from her. Nothing in her past experience or present sense impressions alerted her to the danger she would face.

Finally, whether the hazardous nature of the NSA Chair was obvious turns on a physical inspection of the chair. Unfortunately, the NSA Chair is missing.[101] Plaintiffs first requested and now challenge the United States to produce this chair. Assuming that United States inadvertently (or 'negligently') discarded the NSA Chair, the Maryland Pattern Jury Instructions state:

> The destruction of or the failure to preserve evidence by a party may give rise to an inference unfavorable to that party. . . If you find that the destruction or failure to preserve the evidence was negligent, you may, but are not required to, infer that the evidence, if preserved, would have been unfavorable to that party.[102]

According to the United States, Mrs. Johnson completed a claim form shortly after the incident, and at least one NSA employee, Mr. Walton, admits to knowing about the incident shortly after it occurred. Therefore, the United States was on notice of this incident, and undertook a duty to preserve the NSA Chair well before Mrs. Johnson left the Research & Engineering Building on the date of the occurrence. Therefore, it is permissible to infer that the United States discarded the chair after it was put on notice of this incident, which gives rise to the permissible inference that the NSA Chair, if preserved, would have been unfavorable to the United States.

Finally, two additional pieces of evidence add to Mrs. Johnson's credibility in supporting her version of events. First, Mrs. Johnson completed her claim form shortly after the incident, including identifying potential witnesses.[103] Second, as mentioned by the United States, the Maryland Workers' Compensation Commission adjudicated Mrs. Johnson's claim in her favor after she testified to her version of events.

The weighing of the evidence, the weighing of inferences and the determination of the credibility of each account is for the fact finder.[104] Construing these facts and inferences in the light most favorable to Mrs. Johnson,[105] a genuine dispute of material fact remains whether a dangerous condition – in the form of a defective NSA Chair – existed on the NSA Campus and in the Research & Engineering Building. These permissible and reasonable inferences are sufficient to defeat summary judgment on this point.[106]

---

[101] *See* **Exhibit 8** at Page 7.
[102] Maryland Civil Pattern Jury Instructions 1:10 (MSBA 2009) (General Instructions – "Spoliation").
[103] *See* **Exhibit 7**.
[104] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citations omitted)(quotations omitted).
[105] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)(citations omitted)(quotations omitted).
[106] *Cook v. Baker Equipment Engineering Co.*, 582 F.2d 862, 864-865 (4th Cir. 1978) (quoting *United States v. Diebold*, 369 U.S. 654, 82 S. Ct. 993 (1962). *Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1362 (4th Cir. 1975)

**5.3**    **A GENUINE DISPUTE OF MATERIAL FACT REMAINS WHETHER THE UNITED STATES OF AMERICA HAD CONSTRUCTIVE KNOWLEDGE OF THIS DANGEROUS CONDITION.**

Mrs. Johnson stated that Mr. Walton told her he fell a week earlier on the same chair.[107] Construing this evidence in the light most favorable to Mrs. Johnson, this conversation occurred and Mr. Walton made this statement. However, Mr. Walton was only at the Research & Engineering Building once a month for a Red Cross Blood Drive. Therefore, it is possible that Mrs. Johnson mistook Mr. Walton for another employee or she simply mixed "one month" and "one week." It is possible that Mrs. Johnson, after being injured, could not recall with exact certainty the identity of the individual making this statement or the time frame referred to in the statement.

Most likely, Mrs. Johnson, suffering an injury, simply misheard Mr. Walton's statement. He was only in the Research & Engineering Building once a month for the blood drive, and one week prior to Mrs. Johnson's fall was New Years' Eve and New Years' Day. Because these are federal holidays, the Red Cross probably would not set up a blood drive for donations at a federal facility.

For the purposes of deciding a motion for summary judgment, the evidence is not weighed, nor is the credibility of witnesses determined. Instead, the facts and inferences are taken in the light most favorable to Mrs. Johnson. Here, Mrs. Johnson has produced sufficient evidence to overcome summary judgment based on either (i) the truth, (ii) a mistaken identity, or (iii) a mistaken time frame.

The NSA Chair was discarded after the incident. This was either done because the defect was obvious or to destroy evidence favorable to Mrs. Johnson. Either way, the dangerous condition was known to the United States – this event would not have occurred otherwise. If the defect was that readily obvious, the United States of America was on constructive notice of the dangerous condition of the NSA Chair. Nevertheless, this defect may not have been obvious to Mrs. Johnson or any other Red Cross volunteer retrieving this chair from the cubby hole or pulling this chair from under a table. In any event, it is undisputed that the United States took no action to warn either Mrs. Johnson or her colleague(s) of the dangerous nature of the NSA Chair

---

(citations omitted)). *See also,* 11-56 Moore's Federal Practice - Civil § 56.24 [4][b] ("Inferences From Historical Facts Are Decided by Trier of Fact").

[107] See, e.g., Mrs. Johnson's deposition transcript, the United States Memorandum in Support of Summary Judgment, or **Exhibit 8** (Employee Incident Form).

– despite Mrs. Johnson or her colleague not being able to realize or discover the danger. And the NSA did not take steps to protect them from this danger; for instance, no sign or rope was placed over the cubby hole. Although Mr. Walton believed he labeled most of metal-backed Red Cross Chairs, he could not say for certain whether he labeled all of them. Moreover, because this incident involved an NSA Chair, it is possible that it did not have a warning placed on it. The failure to warn invitees of the cubby hole or each discarded chair constituted a breach of the United States' duty to realize that the premises involved an unreasonable risk of harm to invitees, such as Mrs. Johnson and her colleagues. Therefore, a reasonable juror could conclude that the NSA failed to exercise reasonable care in protecting the invitees from danger.

Furthermore, despite its duty to reasonably inspect its premises, the United States has produced no evidence demonstrating that it made periodic inspections of the Research & Engineering Building. Furthermore, if these periodic inspections took place, the United States has not produced a log showing what was found during these inspections, if anything. Finally, if these inspections took place, then they failed to detect the defective and dangerous condition of the NSA Chair.

Because the condition of the chair was so obvious to the United States when it was discarded after the incident, the inspections, if any, the United States undertook at the Research & Engineering were either not reasonable or failed (because they did not detect this dangerous condition later deemed obvious by the United States).

A genuine dispute exists as to whether a disparity of knowledge existed between the United States and Mrs. Johnson. First, as discussed extensively above, we can infer that the United States knew or should have known that the NSA Chair taken from the cubby hole was defective. Second, we can infer that Mrs. Johnson would not have knowingly sat in a defective chair (and there is no evidence to support this contention). Third, the United States failed to warn Mrs. Johnson or her Red Cross colleague of the defective condition of the NSA Chair or the chairs in the cubby hole. Fourth, as discussed below, the United States either caused this condition or had constructive knowledge of this condition due to the nature of the mission and operation of the NSA and the failure to detect this defective condition (a condition that was so obvious after the incident that the United States quickly discarded the chair). Finally, as discussed in this section, the fact that the missing wheel was not found after the incident gives rise to the inference that the wheel was missing for some time before Mrs. Johnson was injured.

Because some time had passed between the creation of the defective condition and the injury to Mrs. Johnson, we can infer that the United States had constructive knowledge of this defective condition prior to Mrs. Johnson's injury.

The case of *Little v. United States*[108] is distinguishable from our case because our case involves only the government, where the *Little* case involved a café owner, whose knowledge was imputed on the government. Furthermore, the facts support the reasonable inference that the NSA Chair at issue came from the cubbyhole, where the United States knew defective and dangerous equipment was stored, yet the United States failed to sufficient warn invitees of this dangerous condition.

Besides being a case from the State of Georgia with no binding effect, the case of *Ford v. Bank of America Corporation*[109] is factually distinguishable from our case. The Plaintiff in *Ford* was injured by a wheeled chair that went out from under her when she sat down. There was no defect with the wheels in that chair; she did not even notice the chair had wheels. In our case, Mrs. Johnson had no issue with the NSA Chair being wheeled – a condition she noticed. Her issued arouse from the chair flipping due to a missing wheel – a condition not present in *Ford*. Furthermore, unlike our case, there was no indication that the chair in *Ford* was defective in any way.

The case of *Granison v. Builders Square, Inc.*[110] is distinguishable from our case for the same reasons as *Ford*: (i) it is an out-of-state case with no binding effect, and (ii) the chair in *Granison* was not defective. Mrs. Johnson did not have a problem with the obvious nature of a wheeled chair; she had an issue with the chair missing a wheel.

*Page v. Biloxi Regional Medical Center*[111]another non-binding out-of-state case is distinguishable from our case because the chair at issue in *Page* did not have a defect. In our case, the chair at issue had a dangerous defect – it was missing a wheel at the end of one of the five legs.

Even though the United States insists that the condition was "open and obvious" to Mrs. Johnson, the United States has failed to show she assumed the risk of her injuries. The United States has failed to show Mrs. Johnson knew of the defective condition of the chair (common

---

[108] (Unpublished) No. 98-1835, slip op. (4th Cir. 1999).
[109] 277 Ga.App. 708 (2006).
[110] 697 N.Y.S.2d 800 (4th Department 1999).
[111] 2012 WL 2003352 (Mississippi Appellate).

sense dictates that if she did, she would not have sat in the chair), understood the risk of sitting in the defective chair, and voluntarily chose to sit in a defective chair. Simply put, no evidence exists on record to prove any of these elements. In fact, the hidden nature of the defect to Mrs. Johnson shows how truly dangerous the NSA Chair was before Mrs. Johnson sat in it.

This lapse in detecting a dangerous condition on the premises of the Research & Engineering Building might be reasonable under the circumstances for any other proprietor or property owner. However, this case involves the National Security Agency. Americans, including Marylanders, entrust their safety and security to this intelligence agency. The NSA's mission and objective, quite simply, is to detect and fix dangerous conditions around the globe. Therefore, the question of the reasonableness of the inspections, if any, by the United States at the  NSA Campus is most appropriately an issue for the jury composed of members of the community. The issues of reasonableness and foreseeability are prominent in a case involving the National Security Agency.

All parties to this case conducted a site visit to the Research & Engineering Building. Undersigned counsel can attest, supported by the testimony of numerous witnesses, that the level of security surrounding the NSA Campus is impressive. To access the parking lot, one must possess photo identification. To access the interior of the NSA Campus, one must enter through two sets of metal detectors, leave all communication devices behind, undergo fingerprinting, undergo a pre-entrance background check, and, usually, be accompanied by an escort. To access any building within the NSA Campus, one must swipe in through security gates and/or pass through metal detectors.

This Court should take judicial notice of these facts, and infer that the NSA is a tightly-run outfit. We can infer that because the missing wheel to the NSA Chair was not found immediately after the occurrence, it had been missing for some time prior to the occurrence. We can also infer that the lapse of time allowing this dangerous condition to persist would place the United States on constructive notice of this dangerous condition. Therefore, the issue of the reasonableness of the inspections by the United States and whether these inspections should have yielded this hazardous condition are issues for a jury.

Government acquisitions are also a complex area, so the United States should have been aware of the damaged or discarded chairs (or any other office equipment) at the Research & Engineering Building, and the cost-conscious facilities manager would keep a close eye on the

condition of the office equipment, including the NSA Chair, knowing that the budget for replacement furniture is always tight (alternatively, the cost-conscious facilities manager may turn a blind eye to hazardous office equipment, including obviously hazardous equipment, in order to pinch pennies).

Furthermore, the indeterminate schedule and lengthy delay in discarding broken chairs and other material from the Research & Engineering Building, despite the mission of the NSA, its reputation, and the stringent security surrounding the facility, creates the inference that the United States did not reasonably protect invitees of hazardous conditions in the Research & Engineering building. Therefore, the issue of the reasonableness of the actions by the United States to protect invitees from hazardous condition at the Research & Engineering Building is an issue for a jury.

A genuine dispute of material fact remains whether the United States knew or, by the exercise of reasonable care, would have discovered the hazardous condition of the NSA Chair – a condition so obvious to the United States after the incident that it promptly discarded the defectively chair.

**5.4    A GENUINE DISPUTE OF MATERIAL FACTS REMAINS WHETHER THE UNITED STATES OF AMERICA CAUSED THIS DANGEROUS CONDITION.**

The existence of discarded chairs and other materials constituted a dangerous condition at the Research & Engineering Building. Despite knowing about this dangerous condition on the premises, the United States has produced no evidence that it inspected the Research & Engineering Building. Since these dangerous conditions existed for some indeterminate length of time without ample warning to invitees, the failure to inspect the premises created a dangerous condition for invitees to the Research & Engineering Building.

Plaintiffs further incorporate all of their arguments articulated above in Section 5.3. The utter failure of the NSA to inspect its premises, protect invitees from the hazardous items in the cubby hole, or detect the hazardous condition of the NSA Chair combined with the very nature and purpose of the NSA to protect all citizens from hazardous conditions creates the permissible inference that the United States created or caused the hazardous condition that injured Mrs. Johnson.

**6.      A GENUINE DISPUTE OF MATERIAL FACT REMAINS AS TO WHETHER THIS COURT SHOULD DISMISS MR. JOHNSON FROM THIS CASE.**

In support of the United States' motion to dismiss Count Two as to Plaintiff Anthony E. Johnson, the United States failed to attach the claim form that it relies upon in its motion to dismiss. Plaintiffs also dispute the argument that they have to be separated or divorced in order to claim damages from a loss of consortium claim. As a result, a genuine dispute of material fact remains as to whether this Court should dismiss Mr. Johnson from this case.

**WHEREFORE**, Plaintiffs Deborah A. Johnson and Anthony E. Johnson request that this Court:

(a) Deny Defendant United States of America's Motion for Summary Judgment as to Counts One & Two;

(b) Deny Defendant United States of America's Motion to Dismiss as to Count Two; and

(c) Grant such other and further relief as is just under the circumstances.

Respectfully submitted,

**LAW OFFICE OF BARRY R. GLAZER, P.C.**

By: /s/ David C. Ledyard-Marks
    David C. Ledyard-Marks
    Trial Bar No.: 29198
    P.O. Box 27166
    1010 Light Street
    Baltimore, Maryland 21230
    Phone:   (410) 547-8568
    Fax:       (410) 547-0036
    ledyardlaw@gmail.com

*Counsel for Plaintiffs*
*Deborah A. Johnson and Anthony E. Johnson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st Day of November 2012, I filed with the United States District Court, and I served, pursuant to Rule 5 of the Federal Rules of Civil Procedure, a copy of Plaintiffs' Memorandum in Response to the United States' Motion for Summary Judgment as to Counts One & Two and Motion to Dismiss as to Count Two and Exhibits, via the District Court's CM/ECF electronic filing system, upon the following:

Andrew G. W. Norman, Esquire
Assistant United States Attorney
OFFICE OF THE UNITED STATES ATTORNEY
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201

*Counsel for the United States of America*

/s/ David C. Ledyard-Marks
David C. Ledyard-Marks
Trial Bar No.: 29198