IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DEBORAH A. JOHNSON, *et al.*,    *

   Plaintiffs,    *

      v.    *    CIVIL NO.: WDQ-11-2624

UNITED STATES OF AMERICA,    *
*et al.*,

   Defendants.    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Deborah A. Johnson and Anthony E. Johnson (the "Plaintiffs") sued the United States of America and the Department of Defense, Department of the Army for negligence and loss of consortium. Pending are the United States's motions to dismiss Counts Two through Four for lack of subject matter jurisdiction. For the following reasons, the motions will be granted.

I. Background[1]

Deborah Johnson was a phlebotomist employed by the American Red Cross ("the Red Cross"). ECF No. 29-1 at 2. The Red Cross regularly partnered with the National Security Agency ("NSA") to

---

[1] "Motions to dismiss for failure to exhaust administrative remedies are governed by Fed. R. Civ. P. 12(b)(1) [motions to dismiss] for lack of subject matter jurisdiction." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) aff'd, 85 F. App'x 960 (4th Cir. 2004). For such motions, the court may look "beyond the pleadings" to the submitted evidence to determine if jurisdiction exists. *Id.*

perform blood drives at Fort Meade, Maryland. ECF No. 54 at 2-3. For their participation in these blood drives, NSA staff would receive "soup mugs, shirts, shopping bags, and birthday kits." *Id.*

Since 2007, these blood drives have been held on the first floor of the Research and Engineering Building at Fort Meade. *Id.* The Red Cross would set up in a "large open area." *Id.* The Red Cross had metal folding chairs that it provided for the blood drives. *Id.* at 3-4. Between blood drives, the NSA stored the chairs, marked "Red Cross," at Fort Meade. *Id.* When a chair was broken or in disrepair, it was placed in a "cubbyhole" with "other discarded materials" on the first floor of the Research and Engineering Building. *Id.* at 3-4. "From time to time," the NSA would perform security inspections and the broken chairs would be removed. *Id.* In addition to the folding chairs, the Red Cross would also use desk chairs that belonged to the NSA. *Id.* at 2-3. Broken desk chairs were also placed in the cubbyhole. *Id.* at 4. The cubbyhole was not labeled to warn individuals that the contents were broken or in disrepair. *Id.*

On January 7, 2009, the Red Cross held a blood drive at Fort Meade. ECF No. 29-1 at 2. Mrs. Johnson had worked four or five blood drives at Fort Meade before, and was scheduled to work the January 7th blood drive. *Id.* Mrs. Johnson and the

other Red Cross staff were escorted into the building by Larry Walton, a retired NSA employee who "routinely volunteered at the NSA to coordinate Red Cross Blood drives." ECF No. 54 at 2. During the set-up for the blood drive, Walton saw Mrs. Johnson take a NSA desk chair from the cubbyhole and put it at a table. *Id.* at 3. Walton did not warn Mrs. Johnson that the chair might be broken. *Id.* at 3-4. Further, "the head nurse at the blood drive and [] Walton both saw chairs like the Subject Chair that were broken in the area." *Id.*

Mrs. Johnson thought the chair looked the same as the other chairs, and believed that there was "nothing unusual" or "noticeable" about its condition. ECF No. 29-1 at 2. When Mrs. Johnson sat down, "the chair 'scooted' out from underneath her, and the seat 'flipped up.'" *Id.* at 3. Mrs. Johnson fell "spraddle-legged" on the floor. *Id.* A subsequent inspection of the chair revealed that one of its five legs was missing a wheel. *Id.* Mrs. Johnson "promptly filed an employment incident report." *Id.* Watson allegedly told Mrs. Johnson that he had fallen from the same chair the week before.[2] *Id.* Mrs. Johnson stayed for the rest of the blood drive. *Id.*

---

[2] Watson denies that he ever had this conversation and states that the last time he was at Fort Meade was a month before the incident. *See* ECF No. 29-1 at 3.

Because of the fall from the chair, Ms. Johnson allegedly suffers from "soreness . . . in her buttocks, shoulders and lower back" that has affected her daily activities. *Id.* Additionally, her injuries have prevented her from having an intimate relationship with her husband, causing "disharmony" in their marriage. *Id.*

On September 3, 2009, Mrs. Johnson filed an administrative claim with the NSA for her personal injuries. ECF No. 58-1 at 2-3. On September 14, 2011, the Plaintiffs sued the United States and the Department of the Army for negligence and loss of consortium.[3] ECF No. 1, 11. On September 27, 2012, the United States moved to dismiss Count 2 for lack of subject matter jurisdiction and sought summary judgment on Counts 1 and 2. ECF No. 29. On November 1, 2012, the Plaintiffs opposed the motion. ECF No. 32. On December 6, 2012, the Court stayed the case and referred the case to Magistrate Judge Beth P. Gesner for discovery. ECF Nos. 38-39. On September 3, 2013, the Court granted the Plaintiff's request to file an amended response to the United States's motion. ECF No. 53. On October 31, 2013, the Plaintiffs filed their amended response. ECF No. 54. On

---

[3] The amended complaint alleges four causes of action: negligence by the United States (Count 1), loss of consortium caused by the United States (Count 2), negligence by the Department of the Army (Count 3), and loss of consortium caused by the Department of the Army (Count 4). ECF No. 11.

December 6, 2013, the United States replied. ECF No. 58. In the reply, the United States withdrew its motion for summary judgment, but maintained that the Court lacked subject matter jurisdiction on Count 2. *Id.*

Also on December 6, 2013, the United States filed a motion to dismiss all claims against the Department of the Army for lack of subject matter jurisdiction. ECF No. 57. The Plaintiffs did not file a response to this motion.

II. Analysis

A. Subject Matter Jurisdiction

Under Federal Rules of Civil Procedure 12(b)(1) and 12(h), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury*, 268 F. Supp. 2d at 606. The Court may examine evidence "beyond the pleadings" to decide whether it has subject matter jurisdiction, without converting the proceeding to one for summary judgment, but it must presume that the factual allegations in the complaint are true. *See id.*; *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

5

B. Mr. Johnson's Loss of Consortium Claim

The United States asserts that Count 2 should be dismissed because Mr. Johnson did not exhaust his administrative remedies.

The Federal Tort Claims Act ("FTCA") creates a "limited waiver of the United States's sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). In such cases, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; see *Suter*, 441 F.3d at 310.

The plaintiff bears the burden of demonstrating the waiver of sovereign immunity under the FTCA including the inapplicability of any exceptions. *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). Additionally, before filing suit under the FTCA, a plaintiff must exhaust administrative remedies by presenting her claim "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b); *see also McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984, 124 L. Ed. 2d 21 (1993). If the plaintiff fails to exhaust, her claim must be dismissed for lack of subject matter jurisdiction. *See Perkins v. United*

*States*, 55 F.3d 910, 917 (4th Cir. 1995) (*citing McNeil*, 508 U.S. at 113, 113 S. Ct. at 1984).

The United States contends that "loss of consortium was not explicitly or impliedly raised in Mrs. Johnson's administrative claim and Mr. Johnson did not file a claim in his own name." ECF No. 29-1 at 4. The Plaintiffs argue that there is "a genuine dispute of material fact" about whether the Court should dismiss Mr. Johnson's claim because "the United States failed to attach the claim form" to its motion to dismiss.[4] ECF No. 54 at 20. The United States attached the administrative claim to its reply, but argues that it is the Plaintiffs' burden to establish subject matter jurisdiction. ECF No. 58 at 2-3.

The Plaintiffs bear the burden of establishing subject matter jurisdiction and the exhaustion of administrative remedies. *See Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976). Here, Mr. Johnson did not file an administrative claim. An administrative claim by Mrs. Johnson for her personal injuries, that makes no mention of Mr. Johnson, is insufficient to put the United States on notice of Mr. Johnson's loss of consortium claim. *See Santoni v. United States*, 450 F. Supp. 608, 609 (D. Md. 1978). Loss of consortium is "an independent

---

[4] The Plaintiffs' opposition to the United States's motion to dismiss is a paragraph long, and this is the only argument they make. ECF No. 54 at 20.

action, separate from the personal injury claim of [Mrs. Johnson], and, as such, it should have been delineated." *Id.*; *see also Richardson v. United States*, 851 F. Supp. 657, 659-60 (N.D. Ind. 1993) (summarizing cases in multiple jurisdictions).

Further, since Maryland law requires that a claim for loss of consortium be instituted as a joint action by both husband and wife, Mr. Johnson's failure to file an administrative claim as required by 28 U.S.C. § 2675(a), is fatal to Mrs. Johnson's claim. See *Burke v. United States*, 605 F. Supp. 981, 995 (D. Md. 1985) (citing *Deems v. Western Md. Ry. Co.*, 247 Md. 95, 100 (1967)); *Santoni*, 450 F. Supp. at 609. Accordingly, the Court will dismiss Count 2 of the amended complaint.

C. Claims Against the Department of the Army

The United States argues that the Court lacks subject matter jurisdiction over Counts 3 and 4 of the amended complaint because they "name federal agencies and not the United States as defendants." ECF No. 57 at 2.

The FTCA only waives sovereign immunity for claims brought against "the United States." See 28 U.S.C. § 2679. Courts lack subject matter jurisdiction over claims brought against a federal agency *eo nomine*. See *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965); *Strong v. Dyar*, 573 F. Supp. 2d 880, 884-85 (D. Md. 2008). Accordingly, the Court will grant the United

States's motion, and dismiss all claims against the Department of the Army.[5]

### III. Conclusion

For the reasons stated above, the United States's motions to dismiss for lack of subject matter jurisdiction will be granted.

_11/18/14_  
Date

_/s/ William D. Quarles, Jr._  
William D. Quarles, Jr.  
United States District Judge

---

[5] There is no need to address substitution because the Plaintiffs have already asserted identical claims against the United States in Counts 1 and 2 of the amended complaint.  See ECF No. 11.