**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DEBORAH A. JOHNSON,          :

       *Plaintiff,*          :

       v.          :       Civil No. <u>WDQ-11-2624</u>

UNITED STATES OF AMERICA, <u>et al.</u>,   :

       *Defendants*.         :

...o0o...

<u>**JOINT PRE-TRIAL ORDER**</u>

Now come the parties, by the undersigned counsel, and submit the following Pre-Trial Order.

**(A)     BRIEF STATEMENT OF FACTS THAT PLAINTIFF PROPOSES TO PROVE IN SUPPORT OF HER CLAIM:**

The Plaintiff, Deborah Johnson, has sued the United States of America and the Department of the Army under various theories of tort liability. Pending is a claim against the United States of America, which arises under the following cause of action:

Count 1:     Negligence

Deborah Johnson was a phlebotomist employed by the American Red Cross (*hereinafter,* the "Red Cross"). The Red Cross regularly partnered with the National Security Agency (*hereinafter,* the "NSA") to perform blood drives at Fort Meade, Maryland. For their participation in these blood drives, NSA staff would receive "soup mugs, shirts, shopping bags, and birthday kits."

Since 2007, these blood drives have been held on the first floor of the Research and Engineering Building at Fort Meade. The Red Cross would set up in a "large open area." The

Red Cross had metal folding chairs that it provided for the blood drives.  Between blood drives, the NSA stored the chairs, marked "Red Cross," at Fort Meade.  When a chair was broken or in disrepair, it was placed in a "cubbyhole" with "other discarded materials" on the first floor of the Research and Engineering Building.  "From time to time," the NSA would perform security inspections and the broken chairs would be removed.  In addition to the folding chairs, the Red Cross would also use desk chairs that belonged to the NSA.  Broken desk chairs were also placed in the cubbyhole.  The cubbyhole was not labeled to warn individuals that the contents were broken or in disrepair.

On January 7, 2009, the Red Cross held a blood drive at Fort Meade.  Mrs. Johnson had worked four or five blood drives at Fort Meade before, and was scheduled to work the January 7th blood drive.  Mrs. Johnson and the other Red Cross staff were escorted into the building by Larry Walton, a retired NSA employee who "routinely volunteered at the NSA to coordinate Red Cross Blood drives."  During the set-up for the blood drive, Mr. Walton saw Mrs. Johnson take a NSA desk chair from the cubbyhole and put it at a table.  Mr. Walton did not warn Mrs. Johnson that the chair might be broken.  Further, "the head nurse at the blood drive and Walton both saw chairs like the Subject Chair that were broken in the area."

Mrs. Johnson thought the chair looked the same as the other chairs, and believed that there was "nothing unusual" or "noticeable" about its condition.  When Mrs. Johnson sat down, "the chair 'scooted' out from underneath her, and the seat 'flipped up.'"  Mrs. Johnson fell "spraddle-legged" on the floor.  A subsequent inspection of the chair revealed that one of its five legs was missing a wheel.  Mrs. Johnson "promptly filed an employment incident report."  Mr. Walton told Mrs. Johnson that he had fallen from the same chair the week before.  Mrs. Johnson stayed for the rest of the blood drive.

Because of the fall from the chair, Ms. Johnson has suffered extreme soreness and pain that has affected her daily activities.  Additionally, her injuries have prevented her from having an intimate relationship with her husband, causing "disharmony" in their marriage.

Additionally, the Plaintiff will prove her negligence claims against the Defendant at trial, *inter alia,* by demonstrating that the Defendant owed her legal duties of care, that the Defendant breached these duties, that the Defendant was the sole cause of the breaches of these duties, and that as a result of these breaches, she sustained severe damages.

**(B)     BRIEF STATEMENT OF FACTS THAT DEFENDANT UNITED STATES OF AMERICA PROPOSES TO RELY UPON AS A DEFENSE:**

On January 7, 2009, Red Cross held a blood drive at the NSA.  NSA & Red Cross have had a written agreement for many years that authorizes Red Cross teams to conduct blood drives on the NSA campus.  The blood drives are charitable events conducted solely for the benefit of Red Cross and provide no benefit to NSA.  The blood drives are wholly dependent on the goodwill of NSA employees who agree to donate blood.  Plaintiff traveled to NSA's campus to conduct a blood drive, as she had several times before, for the benefit of Red Cross but with NSA's consent, and as such Plaintiff was a bare licensee on the NSA's premises.

Plaintiff arrived at the NSA blood drive location the morning of January 7, 2009 at approximately the same time as retired NSA employee and blood drive volunteer Larry Walton. While waiting for equipment and supplies to arrive, Mr. Walton and Plaintiff, along with others, began setting up a table and chairs for Red Cross staff.  Plaintiff retrieved a chair for herself --- not from the space where folding Red Cross chairs were kept, but from a separate cubby hole in which chairs and other items were stored.  Some, but not all, chairs in this cubbyhole may have been broken.  Plaintiff rolled this chair, which was equipped with castor wheels, approximately

forty yards to the table.

When Plaintiff attempted to sit, she missed the chair and fell to the floor. Plaintiff was able to brace herself with her hands, softening the impact. After falling, Plaintiff noticed that the chair was missing one of its approximately five wheels. The NSA had no notice or knowledge of the alleged defect in the chair. Plaintiff declined medical assistance after the fall and completed her work at the blood drive that day. Plaintiff's work at the blood drive the rest of the day included setting up equipment for the blood drive, attending to donors, packing up the equipment at the end of the blood drive at around 2:00 p.m., and loading the equipment on carts to be transferred from the premises.

On the day of the accident, Plaintiff was evaluated at Concentra Medical Center ("Concentra"), where she was diagnosed with a back and buttock contusion, or bruise. She was given Ibuprofen and an ice pack. Plaintiff did not miss work the next day, nor did she ever take any time off of work as a result of the accident. Within less than a month, on February 2, 2009, doctors at Concentra determined that Plaintiff had reached maximum medical improvement and did not require any further treatment. Plaintiff was released to return to work full duty with no restrictions. But on February 10, 2009, Plaintiff began pursuing further medical treatment from a variety of providers. Not once during Plaintiff's extended period of treatment after February 2, 2009 did Plaintiff ever have a positive MRI or X-ray indicating any injury.

On June 12, 2012, Plaintiff underwent an independent medical evaluation conducted by Dr. Walter Roche, the Government's expert. Dr. Roche found that Plaintiff has an extensive history of multiple work-related injuries dating back to 1985, 1998, 1999, and 2000, which resulted in repetitive injuries to her right wrist, neck, back, head, right tibia and fibula, and right shoulder. Dr. Roche found no residual evidence of soft tissue trauma or musculoskeletal injury

resulting from Plaintiff's January 7, 2009 accident.  Nor did he find any evidence of quantifiable

impairment to Plaintiff as a result of the injury.  Based on his review of the medical

documentation, the greatest injury Plaintiff sustained on January 7, 2009 was a minor, self-

limited, low-velocity, low-height, soft tissue contusion on the buttocks with no lasting injury.

According to Dr. Roche, Plaintiff achieved maximum medical improvement on February 2,

2009, when Concentra discharged her.  Dr. Roche opines that any treatment beyond that date was

excessive, inappropriate and not causally related to the subject accident, and Plaintiff has

suffered no permanent injury or impairment.

**(C)     SIMILAR STATEMENTS AS TO ANY COUNTERCLAIM,
CROSSCLAIM, OR THIRD-PARTY CLAIM:**  Not applicable.

**(D)     AMENDMENTS OF PLEADINGS:**  None.

**(E)     ANY ISSUE IN THE PLEADINGS THAT IS TO BE ABANDONED:**  The

following Counts in Plaintiff's amended complaint have been dismissed pursuant to the Court's

Memorandum and Order, ECF Nos. 60 and 61:

Count Two:  Loss of Consortium

Count Three:  Negligence

Count Four:  Loss of Consortium

**(F)     STIPULATIONS OF FACT/REQUEST FOR ADMISSIONS:**  The parties'

requested stipulations are as follows:

**For Plaintiff:**

1.      Plaintiff requests that the Defendant stipulate to liability.

2.      Those facts contained in the Plaintiff's Brief Statement of Facts and
Legal Theories, above.

***Defendant's response to Plaintiff's requested stipulations:***

1. *Not stipulated.*

2. *Defendant will stipulate to the following facts contained in Plaintiff's statement of facts, but not to any other facts or legal theories in Plaintiff's Statement of Facts, Section A,* supra*, not specifically listed below:*

    a. *"On January 7, 2009, the Red Cross held a blood drive at Fort Meade."*

    b. *"Mrs. Johnson had worked four or five blood drives at Fort Meade before, and was scheduled to work the January 7th blood drive."*

    c. *"Mrs. Johnson stayed for the rest of the blood drive."*

3. *Defendant stipulates to the authenticity of Exhibits 2 through 7 of Plaintiff's Documents to be Offered in Section H,* infra*. Defendant stipulates to the admissibility of Exhibits 5 and 7.*

4. *Defendant does not stipulate to the authenticity or admissibility of Exhibit 1, as Plaintiff has not identified the documents to be offered by Bates number, despite several requests by Defendant.*

**For Defendant:**

1. Plaintiff was present at the NSA's Research and Engineering Building on January 7, 2009 to conduct a blood drive for the Red Cross.

2. Plaintiff was an employee of the Red Cross on January 7, 2009.

3. Red Cross blood drives held at NSA benefit the Red Cross.

4. Larry Walton was present at the NSA's Research and Engineering Building on January 7, 2009 at the time Plaintiff fell while attempting to sit on a chair.

5. Larry Walton witnessed Plaintiff's fall.

6. Plaintiff fell sometime before 7am on January 7, 2009.

7. Plaintiff was able to brace herself before falling to the ground when she attempted to sit on a chair on January 7, 2009.

8. When Plaintiff fell on January 7, 2009, Plaintiff's hands touched the ground before her buttocks touched the ground.

9. Immediately after she fell on January 7, 2009, Larry Walton asked

Plaintiff if she needed medical attention.

10.     Plaintiff declined medical attention immediately after her fall on January 7, 2009.

11.     Plaintiff continued working at the blood drive after her injury on January 7, 2009, until after 2:00 p.m.

12.     Plaintiff's work at the blood drive after her fall on January 7, 2009 included setting up tables, desks, beds, and privacy curtains.  She also helped break down the tables, desks, beds, and privacy curtains and loaded them onto carts to be removed from the premises.

13.     Plaintiff sought medical attention at Concentra Medical Center ("Concentra") after her injury on January 7, 2009.

14.     On January 7, 2009, Dr. Eileen B. Greenwald at Concentra prescribed Plaintiff Ibuprofen and gave her an ice pack.

15.     Providers at Concentra determined that Plaintiff reached maximum medical improvement on February 2, 2009.

16.     On March 23, 2009, Plaintiff underwent an MRI at Open MRImages, 3 Nashua Court, Suite H, Baltimore MD 21221.  The MRI was unremarkable.

17.     On May 4, 2009, Plaintiff underwent an evaluation with Dr. Stephen Matz.  During this evaluation, Plaintiff reported to Dr. Matz that any shoulder and trapezial pain she experienced after her fall resolved shortly after January 7, 2009.

18.     On June 9, 2009, Plaintiff underwent an X-Ray at R&A Radiology Associates, located at 575 South Charles Street, Baltimore MD, 21201. Joseph F. Branda, M.D. reported a negative examination for Plaintiff's right shoulder girdle, pelvis, and hips, along with a normal spine.

19.     Plaintiff's total medical bills arising from the events of January 7, 2009 are $22,258.

20.     There are no activities in which Plaintiff can no longer engage because of the events of January 7, 2009.

21.     Dr. Walter Roche is a physician board-certified in physical medicine and rehabilitation with a subspecialty in pain management.

22.     Dr. Roche specializes in musculoskeletal conditions, physical medicine, rehabilitation, and pain management.

23.   Dr. Roche is an expert in, among other areas, conservative and interventional treatment of diseases of the spine, acute and chronic pain, workers compensation, sports-related injuries, and electrodiagnosis.

24.   In approximately 1981, Plaintiff slipped and fell at work.  She sustained a coccyx injury and underwent physical therapy.

25.   On February 25, 1985, Plaintiff suffered a work-related injury to her right wrist, neck, back, and head.

26.   Plaintiff fell from roller skates in February of 1998.  She broke her right lower leg while getting up from the floor of the skating rink.

27.   Plaintiff filed a lawsuit as a result of her 1998 roller skating injury.

28.   In approximately 1999, Plaintiff fell at work.  She injured her left knee and left wrist.  She underwent physical therapy after these injuries.

29.   In approximately 2000 or 2001, Plaintiff underwent physical therapy for pain in her lower back.

***Plaintiff's response to Defendant's requested stipulations:***  *Plaintiff stipulates to the following:*

2.   *Plaintiff was an employee of the Red Cross on January 7, 2009.*

4.   *Larry Walton was present at the NSA's Research and Engineering Building on January 7, 2009 at the time Plaintiff fell while attempting to sit on a chair.*

18.  *Plaintiff's total medical bills arising from the events of January 7, 2009 are $22,258.*

## G.   DAMAGE CLAIMED/RELIEF SOUGHT:

**For Plaintiff:**

Plaintiff seeks all damages available by law including, but not limited to, damages she sustained as a result of: (1) bodily injury;  (2) the effect such injuries have on her over-all physical and mental health and well-being; (3) the physical pain and mental anguish she has suffered in the past, as well as future pain and suffering which may be expected to continue; (4) humiliation and embarrassment associated with her bodily injuries; (5) medical and other

expenses reasonably and necessarily incurred in the past, and which will continue into the future; (6) loss of earnings in the past; (7) earnings expected to be lost in the future; and (8) any other relief that this Court may deem necessary.

**For Defendant:**

Not applicable.

**H.      DOCUMENTS TO BE OFFERED:**

**For Plaintiff:**

1.      All medical reports and bills that have been produced by the Plaintiff

   o   *Plaintiff requests that all medical reports and bills that have been produced for the Defendant be stipulated to as to authenticity and admissibility.*

2.      Declaration of Larry Walton, dated July 20, 2012

   o   *Plaintiff requests that the Declaration of Larry Walton be stipulated to as to authenticity and admissibility.*

3.      Deposition of Larry Walton

   o   *Plaintiff requests that the Deposition of Larry Walton be stipulated to as to authenticity and admissibility.*

4.      Defendant's Responses to Plaintiff's First Request for Admissions

   o   *Plaintiff requests that the Defendant's Responses to Plaintiff's First Request for Admissions be stipulated to as to authenticity and admissibility.*

5.      Defendant's Response to Plaintiff's First Set of Interrogatories and amendments

   o   *Plaintiff requests that the Defendant's Response to Plaintiff's First Set of Interrogatories and amendments be stipulated to as to authenticity and admissibility.*

6.      American Red Cross Employee Incident Report Form, Bates Number USA000628

o *Plaintiff requests that the American Red Cross Employee Incident Report Form be stipulated to as to authenticity and admissibility.*

7.      Defendant's Responses to Plaintiff's First Request for Documents, Production of Tangible Things, and Entry Upon Land

o *Plaintiff requests that the Defendant's Responses to Plaintiff's First Request for Documents, Production of Tangible Things, and Entry Upon Land be stipulated to as to authenticity and admissibility.*

Plaintiff reserves the right to introduce any documents produced by any party during discovery.

This list does not include documents necessary for impeachment or rebuttal.

**For Defendant:**

*Responses to Requested Stipulations:*

Defendant stipulates to the authenticity of Exhibits 2 through 7 of Plaintiff's Documents to be Offered, above.  Defendant stipulates to the admissibility of Exhibits 5 and 7.  Defendant does not stipulate to the authenticity or admissibility of Exhibit 1, as Plaintiff has not identified the documents to be offered by Bates number, despite several requests by Defendant.

*Objections to Plaintiff's Exhibits:*

Exhibit 1: Defendant reserves the right to object to the introduction of Exhibit 1 as Plaintiff's description, lacking Bates Numbering, is not sufficient to identify the documents Plaintiff intends to introduce, and Plaintiff has failed to produce or identify these documents with bates numbers, despite several requests by Defendant.

Exhibits 2 and 3: Defendant objects to the introduction of Plaintiff's Proposed Exhibits 2 and 3, Larry Walton's declaration and deposition.  These proposed exhibits constitute hearsay and are not subject to any hearsay exceptions.

Exhibit 4: Defendant objects to Plaintiff's Proposed Exhibit 4, as Defendant's Responses to Requests for Admission Numbers 1 through 4 were withdrawn by court order.  *See* ECF Nos.

35 (Defendant's Motion to Withdraw or Amend Responses to Plaintiff's Request for

Admissions), 44 (Order Granting Defendant's Motion to Withdraw or Amend Responses).

Defendant will stipulate to the authenticity and admissibility of Defendant, USA's Amended

Responses to Plaintiff's First Request for Admissions, dated February 14, 2013.

     Defendant objects to the introduction of any document by Plaintiff, regardless of whether

produced by any party during discovery, not specifically listed in Section H of this document,

pursuant to L.R. 106.2(h).

     *Defendant's Proposed Exhibits:*

1. Records of Medical Treatment from Concentra Medical Center, Bates numbers USA000636-641, USA000646-655, USA000660-687.

2. Records from Dr. Stephen R. Matz, Bates numbers USA00362-379.

3. Plaintiff's February 10, 2010 Loss of Enjoyment Summary, USA00403

4. Plaintiff's March 23, 2009 MRI Report, Bates number USA00409.

5. Plaintiff's June 9, 2010 X-Ray Report by R&A Radiology Associates, Bates number USA00272.

6. Plaintiff's Red Cross records, Bates numbers USA000471, USA000480-481, USA000493-524, USA000558-563

7. Larry Walton's records of attendance at NSA from December 2008 and January 2009.

8. Agreement between NSA and Greater Chesapeake and Potomac Blood Services Region of the American Red Cross ("ARC") dated April 12, 2002, attached to and referenced in August 22, 2012 Declaration of Sandra Ware.

9. June 12, 2012 Expert Report by Dr. Walter J. Roche.

10. Curriculum Vitae of Dr. Walter J. Roche.

11. Plaintiff's Answers to Interrogatories Propounded by the Federal Defendants, January 27, 2012.

12. Plaintiff's Responses to the Request for Production of Documents Propounded by Federal Defendants and accompanying documents parts 1,

3, and 4, January 19-20, 2012.

13.     Plaintiff's Answers to Interrogatories Propounded by Tower Federal
        Credit Union, March 5, 2012.

14.     Anthony E. Johnson's Answers to Interrogatories Propounded by Tower
        Federal Credit Union, March 12, 2012.

Defendant reserves the right to introduce any document attached as an exhibit to a
deposition, declaration, or affidavit.

Defendant reserves the right to introduce any document on Plaintiff's exhibit list.

This list does not include documents necessary for impeachment or rebuttal.

**I.      WITNESSES TO BE CALLED:**

Where not already provided for either party, addresses and telephone numbers of
the witnesses below will be provided as soon as they are available, pursuant to Local
Rule 106.2.i.

        **For Plaintiff:**

Ms. JoAnn Bell
737 Woodington Road
Baltimore, MD 21229
(443) 865-9032
*Witness if Need Arises*

Ms. Katrina Jackson
*Witness if Need Arises*

Ms. Ebony James
*Witness if Need Arises*

Deborah Johnson
1612 Ingram Road
Baltimore, Maryland   21239
(410) 435-5125
*Witness shall be Present*

Anthony Johnson
1612 Ingram Road
Baltimore, Maryland 21239
(410) 435-5125
*Witness if Need Arises*

Tyrese Purdie
Address in Defendant's Possession
*Witness if Need Arises*

Ms. Nailah Scott
4220 Eldone Road
Baltimore, MD 21229
(443) 768-8843
*Witness if Need Arises*

Ms. Amber Simpson
*Witness if Need Arises*

Larry Walton
Address in Defendant's Possession
*Witness if Need Arises*

Ms. Anita Chisolm-Watson
1531 Stonewood Road
Baltimore, MD 21239
*Witness if Need Arises*

Michael Davis (or another designee to authenticate documents produced by the
Defendant)
Address in Defendant's Possession
*Witness if Need Arises*

**For Defendant:**

Witnesses who will be called:

Mr. Larry Walton
8104 Dubemy Circle, Apt. 1804
Pasadena, MD 21122
(443) 831-1791

Witnesses who may be called:

Ms. JoAnn Bell
737 Woodington Road
Baltimore, MD 21229
(443) 865-9032

Ms. Noleter Hill
1307 Limit Avenue
Baltimore, MD 21239
(410) 292-6028

Ms. Katrina Jackson
136 N. Luzerne Ave.
Baltimore, MD 21224

Ms. Ebony James
8072 Green Bud Lane #T4
Glen Burnie, MD 21061
(443) 743-7812

Dr. Stephen Matz
575 S. Charles Street
Baltimore, Maryland 21201
(410) 727-3615

Ms. Donna McKenzie
540 University Drive
Waldorf, MD 20602

Ms. Tyreece Purdie
310 Lord Byron Ln #201
Cockeysville, MD 21030

Ms. Nailah Scott
4220 Eldone Road
Baltimore, MD 21229
(443) 768-8843

Ms. Amber Simpson
6501 Laurel Drive
Baltimore, MD 21207

Ms. Sandra Ware

Ms. Anita Chisolm-Watson
1531 Stonewood Road
Baltimore, MD 21239

Defendant reserves the right to call any witness listed or otherwise referenced on Plaintiff's witness list.

**J.      EXPERT WITNESSES:**

**For Plaintiff:**

*Robert W. Macht, M.D.*, of Macht Medical Group, located at 575 S. Charles Street, Baltimore, Maryland 21201. Telephone: (410) 727-3615. Dr. Macht is a physician

licensed to practice medicine in the State of Maryland, and specializes in general surgery and independent medical examinations.

*Mohammad S. Malik, M.D.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Malik is a physician licensed to practice medicine in the State of Maryland, and specializes in family medicine. *Will call if Need Arises.*

*Faisal A. Sayeed, M.D.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Sayeed is a physician licensed to practice medicine in the State of Maryland, and specializes in anesthesiology. *Will call if Need Arises.*

*Michael Brown, D.C.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Brown is a chiropractor licensed to practice in the State of Maryland, and specializes in chiropractics. *Will call if Need Arises.*

*Joseph F. Branda, M.D.*, of R&A Radiology Associates, located at 575 S. Charles Street, Baltimore, Maryland 21201. Telephone: (410) 727-3615. Dr. Branda is a physician licensed to practice medicine in the State of Maryland, and specializes in diagnostic radiology. *Will call if Need Arises.*

*Eileen B. Greenwald, M.D.*, of Concentra Medical Centers, 1419 Knecht Avenue, Baltimore, Maryland 21227. Dr. Greenwald is a physician licensed to practice medicine in the State of Maryland, and specializes in preventative medicine and occupational medicine. *Will call if Need Arises.*

*Rajul Shah, P.A.-C.*, of Concentra Medical Centers, 1419 Knecht Avenue, Baltimore, Maryland 21227.  Mr. Shah is a certified physician's assistant licensed to assist in the practice of medicine in the State of Maryland, and specializes in general surgery and independent medical examinations. *Will call if Need Arises.*

*Thomas Brookman, P.A.-C.*, of Concentra Medical Centers, 1419 Knecht Avenue, Baltimore, Maryland 21227.  Mr. Brookman is a certified physician's assistance, licensed to assist in the practice of medicine in the State of Maryland. *Will call if Need Arises.*

*Ronny Santosa, M.D.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Santosa is a physician licensed to practice medicine in the State of Maryland, and specializes in internal medicine. *Will call if Need Arises.*

*Meenakshi (Mini) Pandit, M.D.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Pandit is a physician licensed to practice medicine in the State of Maryland, and specializes in

general surgery and independent medical examinations. *Will call if Need Arises.*

*Angela Swinson, M.D.*, of Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Swinson is a physician licensed to practice medicine in the State of Maryland, and specializes in occupational medicine. *Will call if Need Arises.*

*Constantine A. Misoul, M.D.*, Multi Specialty Health Care, located at 3 Nashua Court, Suite H, Baltimore, Maryland 21221. Telephone: (410) 933-5678. Dr. Misoul is a physician licensed to practice medicine in the State of Maryland, and specializes in orthopedic surgery. *Will call if Need Arises.*

Plaintiff reserves the right to designate other qualified individuals from Multi-Specialty Health Care to provide expert testimony on the above-referenced subject matter should Drs. Malik, Saheed, Brown, Santosa, Pandit, Swinson, and Misoul be unavailable to testify at trial.

Plaintiff reserves the right to designate other qualified individuals from Concentra Medical Centers to provide expert testimony on the above-referenced subject matter should Mr. Brookman, Mr. Shah, and Dr. Greenwald be unavailable to testify at trial.

Plaintiff reserves the right to designate other qualified individuals from R & A Radiology Associates to provide expert testimony on the above-referenced subject matter should Dr. Branda be unavailable to testify at trial.

Plaintiff reserves the right to designate other qualified individuals from Macht Medical Group to provide expert testimony on the above-referenced subject matter should Dr. Macht be unavailable to testify at trial.

Plaintiff reserves the right to designate other qualified individuals from any of the designated medical service providers to provide expert testimony on the above-referenced subject matter should any of the designated experts be unavailable to testify at trial.

Plaintiff reserves the right to rely upon expert testimony proffered by any other party to this action or to call as an expert on its own behalf any expert witnesses designated by any other party in this case.

**For Defendant:**

Dr. Walter Roche
Medstar Orthopaedics & Sports Medicine
3333 N Calvert St. Suite 400
Baltimore, MD 21218
(410) 554-2155

Dr. Roche is a physician who is board-certified in physical medicine and rehabilitation with a subspecialty in pain management.  His practice focuses on musculoskeletal conditions, physical medicine, rehabilitation, and pain management.  Dr. Roche is an expert in, among other areas, conservative and interventional treatment of diseases of the spine, acute and chronic pain, workers compensation, sports-related injuries, and electrodiagnosis.

Defendant reserves the right to call or otherwise elicit expert testimony from any expert listed or otherwise referenced on Plaintiff's witness list.

Defendant objects to any attempt by Plaintiff to call any expert witness or hybrid fact/expert witness not individually named in Section J, *supra*, or disclosed pursuant to Fed. R. Civ. P. 26(a)(2)(B)-(C).

**K.    Deposition Designations:**

**For Plaintiff:**

Based on the currently known availability of witnesses and case status, Plaintiff does not intend to read into the record deposition portions in her case in chief other than sections of Larry Walton's Deposition if there are not adequate stipulations to avoid the exercise. This does not, however, include impeachment or any other deposition use in the Plaintiff's case in chief.

**For Defendant:**

Defendant objects to any attempt to read into the record deposition portions of any witness other than Plaintiff, a party opponent.  Such statements would be inadmissible hearsay under Fed. R. Evid. 801.

Pursuant to Fed. R. Civ. P. 32(a)(4), Defendant designates the following portions of Plaintiff's June 19, 2012 deposition transcript:

Page 34, line 25 to page 36, line 3
Page 40, lines 5 to 21
Page 44, line 6 to page 45, line 17
Page 45, line 22 to page 46, line 5
Page 46, line 20 to page 47, line 16
Page 50, lines 15 to 23
Page 51, line 14 to page 52, line 9
Page 52, lines 15 to 25
Page 54, lines 5 to 17

Page 55, line 6 to page 56, line 12
Page 60, line 15 to page 61, line 14
Page 62, line 20 to page 63, line 8
Page 63, line 23 to page 64, line 25
Page 66, line 17 to page 67, line 6
Page 68, line 6 to page 69, line 18
Page 73, line 23 to page 74, line 19
Page 75, lines 8 to 18
Page 76, line 15 to page 78, line 10
Page 86, line 15 to page 87, line 18
Page 88, line 18 to page 89, line 13
Page 89, line 25 to page 90, line 3
Page 91, lines 1 to 14

**L.     Any Other Pretrial Relief:**

**For Plaintiff:**

None at this time.

**For Defendant:**

Defendant will file Motions in Limine in accordance with the Court's scheduling order.

In addition, Defendant requests that Plaintiff be barred from requesting damages for loss of earnings in the past and earnings expected to be lost in the future.  *See* Section G, *supra*. When asked to explain any claim for impairment of earnings, in response to Interrogatory No. 22 Propounded by the Federal Defendants, Plaintiff only stated that, "Plaintiff had to change positions at her job because there was too much sitting involved in her previous job assignment." When asked to itemize and explain her calculation of any economic or non-economic damages in this action, in response to Interrogatory No. 23 Propounded by the Federal Defendants, Plaintiff did not provide any itemization or calculation of loss of earnings in the past or earnings expected to be lost in the future.  Plaintiff's interrogatory responses were neither amended nor supplemented by Plaintiff during discovery.  And, in discovery, Plaintiff produced no quantification or computation or other evidence regarding how this alleged change in jobs

affected her earnings.  In fact, Plaintiff testified at her deposition that she did not take any time off of work as a result of her injuries.  Deborah Johnson Deposition at 67:2-6.  She also testified that there are no activities she can no longer engage in as a result of the events of January 7, 2009.  *Id.* at 68:6-12.  Therefore, Plaintiff should be precluded from asserting claims for loss of earnings in the past and earnings expected to be lost in the future.

Defendant also requests that Plaintiff be barred from requesting damages for future medical and other miscellaneous expenses.  *See* Section G, *supra*.  When asked to itemize and explain her calculation of any economic or non-economic damages in this action, in response to Interrogatory No. 23 Propounded by the Federal Defendants, Plaintiff did not provide any itemization or calculation of future medical and other miscellaneous expenses.  Plaintiff's interrogatory response was neither amended nor supplemented by Plaintiff during discovery. And, in discovery, including her deposition, Plaintiff produced no quantification or computation or other evidence regarding how future medical and other miscellaneous expenses.  Therefore, Plaintiff should be precluded from asserting claims for future medical and other miscellaneous expenses at this late date.

**M.     ANY OTHER MATTERS ADDED BY THE COURT**

None.

Respectfully submitted,


_____/s/_____          _____/s/_____
Charles H. Edwards, Bar No. 29977          Molissa H. Farber, Bar No. 802255
Law Office of Barry R. Glazer, P.C.          Assistant United States Attorney
P.O. Box 27166          U.S. Attorney's Office
1010 Light Street          36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21230          Baltimore, Maryland 21201
(410) 547-8568          (410) 209-4862
Charles.Edwards@robinhoodlawyers.com          Molissa.Farber@usdoj.gov
*Attorneys for Plaintiff*          *Attorney for Defendant United States of*
          *America*

<u>CERTIFICATE OF SERVICE</u>

I certify that on January 23, 2015, a copy of the foregoing Joint Pretrial Order, was

caused to be served by filing that document with the Clerk of the Court under the Court's

CM/ECF system, which electronically transmits a copy to the registered participants as identified

on the Joint Pretrial Order, and paper copies will be mailed by first class mail, postage prepaid,

to those identified as nonregistered participants.


                                                /s/
                                        Molissa H. Farber
                                        Assistant United States Attorney